[No. 940-2. Division Two. April 29, 1974.]

COMMERCIAL CREDIT CORPORATION, *Respondent*, v. WALLY A. WOLLGAST *et al., Appellants.*

*Robert M. Reynolds*, for appellants.

*Harvey S. Poll* and *Guttormsen, Scholfield & Stafford,* for respondent.

PEARSON, C.J.—Defendants Wally A. Wollgast and wife appeal from a deficiency judgment allowed pursuant to the terms of a security agreement with plaintiff, Commercial

Credit Corporation, a Maryland corporation. The case was tried to the court in Pierce County, sitting without a jury.

Defendants challenge several of the court's findings of fact and conclusions of law. In particular the contention is made that the trial court's conclusion that a deficiency judgment is proper even though notice of the private sale was not sufficient under RCW 62A.9-504, is an erroneous conclusion. Also defendants question the validity of an agreement under which the court awarded attorney's fees and the amount of those fees. In our opinion, the trial court ruled properly on these questions and the judgment should be affirmed.

The salient facts are as follows. During the fall of 1968 defendant, Wally A. Wollgast, operated a service station in Superior, Montana. As a side line, he sold snowmobiles. On September 20 of that year the security agreement in question was executed to obtain 90 percent of the wholesale financing of eight snowmobiles and two trailers. The agreement contemplated a continuing lending arrangement, with interest "to be paid at the rate agreed upon from time to time and as evidenced by a monthly statement rendered to Dealer [Wollgast] by Secured Party [Commercial Credit Corp.] . . ." Interest was payable by defendant upon receipt of the monthly statement. The agreement contemplated repayment of portions of the loan as the snowmobiles were sold by defendant.

The security agreement contained a provision concerning default which provided for acceleration of the debt, a repossession without legal process remedy, private sale of the repossessed merchandise, and deficiency judgment for any balance not covered by the sale. This provision (paragraph 6 of the security agreement) is set forth verbatim in the margin.[1]

---

[1]Paragraph 6 of the security agreement stated: "If Dealer fails to pay any amount due Secured Party, hereunder or otherwise, or fails to sell Merchandise by the maturity date set forth in the related Supplement to Wholesale Security Agreement, or within any extended periods agreed upon in writing, or if Dealer should breach or default in the

It should be noted that paragraph 6 does not purport to allow attorney's fees in the event the Secured Party requires legal services to enforce collection of a deficiency judgment. However, a "guaranty" agreement was executed on November 18, 1968, by which defendant unconditionally guaranteed full performance of the security agreement. By this "guaranty" defendant agreed *inter alia* to reimburse plaintiff "on demand, for all expenses, including attorneys' reasonable fees, incurred . . . in the enforcement or attempted enforcement . . . " of the agreement.

During the ensuing months the two trailers and five of the snowmobiles were' sold and portions of the loan were repaid. On April 2, 1969, plaintiff informed defendant by letter that the interest rate was increased from 7 to 9 percent. Defendant testified that he protested this increase, but was told there was nothing he could do about it.

The last payment defendant made on the loan was in July of 1969. In October of that year, defendants moved from Montana to Pierce County, Washington, taking the three remaining snowmobiles with them.

---

performance of this or any of its agreements or obligations with or to Secured Party, or if any proceeding in bankruptcy, reorganization, insolvency or receivership, be filed by or against Dealer, or if any execution, attachment or other writ or tax lien be levied or filed upon Merchandise, or any of Dealer's property, or if Secured Party deems any part of Merchandise or its security interest therein insecure, all indebtedness owing to Secured Party shall become immediately due and payable, at Secured Party's option, and Secured Party may enter any premises and take possession of Merchandise, without notice or demand, and without legal process. Secured Party may sell Merchandise, and all equity of redemption of the Dealer therein, either at public auction or private sale, after giving reasonable notice, which need not be more than 3 days, of the time and place of any public sale or of the time after which any private sale or any other intended disposition thereof is to be made, and at any such sale the Secured Party may purchase Merchandise. The proceeds of sale, less the reasonable expenses of retaking, holding, preparing for sale, and selling, and the reasonable attorneys' fees and legal expenses incurred by the Secured Party, shall be applied toward the payment of the indebtedness secured hereby, the surplus if any, shall be paid to Dealer, and Dealer agrees to pay any deficiency. In addition to all the rights granted to Secured Party hereunder, Dealer agrees that Secured Party shall have all the rights of a Secured Party under the Uniform Commercial Code."

During the next several months, the machines were on display for sale at a bowling alley in Spanaway or stored in a service station. One of the machines was inoperable, since it had one of its tracks missing. The other two were used as demonstrators, and were shown to prospective customers by running them on the bare ground.

By July 1970, defendant had been unsuccessful in selling the machines. He testified that the Tacoma area was a poor market and many of the other dealers were "cut throating" their prices, which he refused to do. There was also a scarcity of spare parts for the machines. At this time, he was also in arrears on interest payments of some $75.78. For these reasons, according to defendant, he suggested to plaintiff's representative in Spokane, that the company pick up the machines, take them to Spokane, and try to sell them there, where the market was better.

On July 2, 1970, plaintiff's Seattle representative, with defendant's assistance, loaded the snowmobiles in a pickup truck and took them to Seattle, where they remained in storage in the representative's private garage until late October 1970. At that time they were trucked to Spokane. Repossession reports made both in Seattle and Spokane showed the machines to be in poor condition, with various missing parts.

On September 11, 1970, plaintiff's district manager in Spokane sent a letter notifying defendant that he was 4 months in arrears in interest payments and that a principal balance of $1,759.72 was due on the account. The following paragraph of that letter was the only notice of plaintiff's intention of sale:

This is our final demand upon you for these amounts. Your failure to contact us or payment of this will necessitate our selling the snowmachines and naturally if they are sold for more than what is owing this amount will be returned to you. However, should they be sold for less than the balance owing the deficiency will be referred to our attorney for whatever legal action necessary to collect the deficiency amount from you.

Defendants made no response to this letter. On or about November 11, 1970, the three snowmobiles were sold to the highest of three bidders for a total of $300.

Plaintiff's complaint sought a judgment of $1,759.72, plus $75.78 interest, less the $300 selling price, for a net sum of $1,535.50. Plaintiff made no claim for interest after the date it took possession of the machines, nor did it claim any charge for storage, transportation or selling costs, as it might have done under the security agreement. Plaintiff also sought a reasonable attorney fee award.

Defendant's amended answer alleged that defendant allowed repossession by plaintiff on an oral agreement with plaintiff's district manager in Spokane and that no deficiency judgment would be claimed.[2] A counterclaim for $3,147 was also asserted by defendant, based upon plaintiff's failure to give defendant proper notice of sale, claiming $3,147 to be the retail value of the three machines.

Upon disputed evidence, the trial court found and concluded that plaintiff had acted properly under the law and the agreement; that it had repossessed the snowmobiles and sold them in a commercially reasonable manner, pursuant to provisions of the Uniform Commercial Code; that despite the failure of plaintiff to give defendant proper notice of sale under RCW 62A.9-504, plaintiff was nevertheless entitled to a deficiency judgment of $1,535.50.

The court allowed defendant a $200 offset against the judgment, finding that there were "unexplained material differences in the reports of the conditions of the snowmobiles on the two dates the repossession reports were completed." Finally, the court allowed plaintiff an attorney's fee award of $1,225.

■ Defendant's first contention that failure to give sufficient notice of the sale as required by RCW 62A.9-504(3) deprives plaintiff of its right to a deficiency judgment was decided adversely to defendant by Division Three of the Court of Appeals in *Grant County Tractor Co. v. Nuss*, 6

---

[2]This allegation was vigorously denied by the Spokane representative, and the trial court refused to find such an agreement.

Wn. App. 866, 496 P.2d 966 (1972). According to that decision, with which we agree, the only penalty for failure to give proper notice is the debtor's right to recover from the creditor any loss caused by the failure to give that notice. RCW 62A.9-507(1).

We agree with the trial court's finding that notice was insufficient, since the notification did not specify the time after which the private sale was to be made. RCW 62A.9-504(3).[3] But we are also of the opinion that substantial evidence supported the additional finding that plaintiff made the sale in a "commercially reasonable" manner (RCW 62A.9-504(1) and (3)), and that defendant failed to establish any damage by virtue of the "method, manner, time and terms" of the sale. RCW 62A.9-507(2).

Defendant contends on the one hand that the price obtained at the private sale was substantially below the retail value he placed upon the snowmobiles. But on the other hand he acknowledges that market conditions were depressed and that he had been unable to retail the machines in almost a year before they were repossessed. In our opinion, the competitive bid method utilized by plaintiff was commercially reasonable under the circumstances of this case. *Nelson v. Monarch Inv. Plan of Henderson, Inc.*, 452 S.W.2d 375 (Ky. 1970). Furthermore, defendant made no claim that had he received notice of the sale he would have been able to take any action to obtain a higher price. On the contrary, his disregard of the letter of September 11,

---

[3]RCW 62A.9-504(3) provides, in part:

"Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or *reasonable notification of the time after which any private sale* or other intended disposition *is to be made* shall be sent by the secured party to the debtor, . . ." (Italics ours.)

1970, indicates his intention to wash his hands of the transaction.

Defendant urges, however, that we should go beyond the holding in *Grant County Tractor Co. v. Nuss, supra,* and follow the views expressed in *Norton v. National Bank,* 240 Ark. 143, 398 S.W.2d 538 (1966). In that case a bank which had financed the sale of a used automobile sold the automobile at private sale upon default by the purchaser, without giving notice to the dealer who had guaranteed the transaction by way of a repurchase agreement. Under those circumstances the Arkansas Supreme Court in a well-reasoned opinion concluded at page 150:

> We think the just solution is to indulge the presumption in the first instance that the collateral was worth at least the amount of the debt, thereby shifting to the creditor the burden of proving the amount that should reasonably have been obtained through a sale conducted according to law.

A judgment in favor of the bank was reversed and remanded for a new trial with that controlling principle in mind. There is an obvious and significant factual distinction between that case and the one at bar. The repurchase agreement gave the dealer in that case an absolute right to control the sale by buying the automobile back from the bank for the amount due on it. This option was foreclosed by the failure of any notice.

In the case at bar, defendant had voluntarily relinquished possession of the collateral because he had been unable to sell the machines. The purpose of relinquishment was to allow plaintiff to sell them. Furthermore, defendant had notice of plaintiff's intention to sell the snowmobiles, made no response, and was financially unable to take any action. Under these circumstaces the holding in *Nelson v. Monarch Inv. Plan of Henderson, Inc., supra,* would appear pertinent. In that case, the debtor voluntarily transferred possession of the collateral to the plaintiff, indicating that he had no further interest in it and did not intend to bid on it. There was no evidence that any notice to him would

have resulted in a higher sales price. The Kentucky court concluded that the debtor either waived his right to notice or was estopped to claim damage by reason of the creditor's failure to give it.[4] *Grant County Tractor Co. v. Nuss, supra.* We think that ruling is applicable here.

Defendant further contends that he did establish that the collateral deteriorated in value during the 5 months the snowmobiles were in plaintiff's possession prior to the sale. The evidence was in sharp conflict as to the condition of the snowmobiles at the time they were repossessed. The trial court found and concluded that the initial repossession reports materially differed from additions made to those reports when the machines arrived in Spokane. Estimated as the damage for this disparity was $200, for which an offset was allowed without specific testimony supporting the sum. Defendant offered no testimony as to the value of the parts which he contended were missing after delivery of the machines was made. The discrepancies in the repossession reports were concerned primarily with missing parts.

In our opinion, defendant failed to sustain the burden of proof on the damages, if any, and no prejudice is shown by the trial court's allowance of $200. We note that RCW 62A.9-207(1) requires a secured party to use reasonable care in the custody and preservation of collateral in his possession. We are asked to rule that this provision, together with the fact that some damage to the snowmobiles was shown, creates a presumption that plaintiff negligently handled the snowmobiles and casts upon plaintiff the burden of explaining the damage. Thus, we are asked to apply the rules that pertain to bailments for mutual benefit. *Chaloupka v. Cyr,* 63 Wn.2d 463, 387 P.2d 740 (1963).

We are persuaded that the analogy is a sound one. Even if we assumed that plaintiff's negligence resulted in damage to the machines, we fail to see how that fact helps defendant in this case. The repossession reports clearly out-

---

[4]In so holding, the Supreme Court of Kentucky restricted the statutory prohibition against waiver to a preemptive waiver contained in the security agreement itself. RCW 62A.9-501(3).

line the condition of the machines at the time of repossession and/or sale. The bailment rule does not require the bailee to establish the amount of damages due to its negligence. It requires only that the bailee show, if it can, how the damage occurred without negligence on its part. The burden of proof of damages rests on the party who asserts them. This is true under RCW 62A.9-507(1). Defendant failed to show how the missing snowmobile parts affected their market value, and consequently defendant was not prejudiced by the $200 estimate made by the trial court.

Defendant also contends that the increase in interest rate from 7 percent to 9 percent was never agreed to, as contemplated by the security agreement. Consequently, interest should only have been allowed at the lower rate. We think the trial court properly concluded that plaintiff had a right to raise the interest rates in a reasonable manner as a condition to continuing the loan. The lending arrangement as structured in the security agreement is analogous to a monthly demand note which is renewable at a commercially reasonable interest rate. If an increase in interest is unacceptable to the borrower, he can avoid it by paying off the principal amount. A continuance of the loan is an acceptance of the interest increase. There was no proof to show that the interest rate was commercially unreasonable.

Finally, we consider the question of attorney's fees. Defendant contends that plaintiff failed to prove the validity of the guaranty agreement which was executed some 2 months after the security agreement. It is contended that no consideration was shown to have passed for the execution of that agreement, which contained the only basis for an award of attorney's fees.

This contention was not made to the trial court until post-trial argument, when the subject of the amount of attorney's fees was considered. No objection was made to admission of the guaranty agreement, nor was its validity attacked in any respect at trial. Had a timely assertion of lack of consideration been made, plaintiff would have had the opportunity to adduce evidence as to the agreement's

validity. A post-trial objection was too late. We need not consider on appeal a theory which the lower court had no effective opportunity to consider and rule upon at trial. *See Bellevue School Dist. 405 v. Lee*, 70 Wn.2d 947, 425 P.2d 902 (1967).

 Defendant also complains of the amount of attorney's fees allowed by the trial court. Whether attorney's fees are reasonable is a question of fact to be decided in light of the circumstances of each individual case. The trial court has broad discretion in making this award. *Renton v. Dillingham Corp.*, 79 Wn.2d 374, 485 P.2d 613 (1971). "Discretion is abused only where no reasonable man would take the view adopted by the trial court." *Jankelson v. Cisel*, 3 Wn. App. 139, 142, 473 P.2d 202 (1970).

In allowing $1,225 on a recovery of $1,335.50, the trial judge considered the attorney's time and the hourly rates prevailing in this area. He considered as well the fact that defendant put up a "substantial fight on a small amount." The trial court stated:

> If we were talking about a default matter that is one thing and I would severely limit the amount of fees that would be awarded on a default to some relatively small percentage, but we are not talking about that, we are talking about a case where . . . a legal aid office working essentially on a government payroll has decided to make an issue out of this and make the creditor scratch every inch of the way to the end that here is the time that we have.

The record justifies the court's statements and we find no abuse of discretion in the amount of fees awarded.

The same things can be said of the appeal phase of the proceedings and we are compelled to allow an additional $500 attorney's fees. *Ranta v. German*, 1 Wn. App. 104, 459 P.2d 961 (1969).

Judgment affirmed.

ARMSTRONG and PETRIE, JJ., concur.

Petition for rehearing denied June 10, 1974.

Review denied by Supreme Court July 30, 1974.