

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| THE BANK OF NEW YORK, As | ) | |
| Trustee, Pursuant to the Terms of that | ) | No. 31034-5-III |
| Certain Pooling and Servicing Agreement | ) | |
| Dated as of November 1, 1996 Related to | ) | |
| Metropolitan Asset Funding, Inc., | ) | |
| Mortgage Pass-Through Certificates | ) | |
| Series 1996-A, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent, | ) | |
| v. | ) | |
| | ) | |
| MARCO T. BARBANTI, ROYAL | ) | |
| POTTAGE ENTERPRISES, Inc., and | ) | |
| JUNCO FROST LAVINIA, Inc., | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| STERLING SAVING BANK, UNIFUND | ) | |
| CCR PARTNERS, and BANKERS | ) | |
| TRUST COMPANY OF CALIFORNIA, | ) | |
| | ) | |
| Defendants. | ) | |

FEARING, J. — Appellants Marco T. Barbanti, Junco Frost Lavinia Inc., and Royal

Pottage Enterprises Inc., appeal a summary judgment order, in favor of plaintiff Bank of

New York (BONY), judicially foreclosing a real estate contract and quieting title to the

sold commercial property. Appellants' assignments of error raise issues regarding

standing and real party in interest, the propriety of summary judgment, the timing of judicial foreclosure procedures, and the availability of quiet title remedies. We affirm the trial court's entry of summary judgment declaring appellant Barbanti to be in default in his obligations under the real estate contract. We reverse the trial court's quieting of title in favor of BONY and remand for purposes of proceeding with the statutorily required foreclosure process, after resolving the amount of the debt owed.

## FACTS

This case involves a contract to purchase and sell real estate subject to a deed of trust securing a promissory note, an arrangement that eventually involved six parties, and that this court previously addressed in *Bank of New York v. Hooper*, 164 Wn. App. 295, 298-302, 263 P.3d 1263 (2011), *review denied*, 173 Wn.2d 1021 (2012). The facts have not changed substantially from the prior litigation.

Brian R. Hooper and Lisa M. Hooper owned commercial property on North Division Street in Spokane. In March 1993, they signed a promissory note for $143,000 secured by a deed of trust on the property in favor of Metropolitan Mortgage and Securities Company. Then, in May 1996, the Hoopers signed a real estate contract selling the property to Barbanti for $160,000. Barbanti paid the Hoopers $7,000 down, agreed to pay them $19,450.17 in monthly installments, and agreed to fund their monthly payments for the $133,549.83 still owed on the promissory note secured by the deed of trust.

The real estate contract provided that Barbanti would purchase the property subject to the deed of trust. He agreed the purchase price he must pay included the principal then due under the related promissory note, which was $133,549.83. But Barbanti did not assume this obligation directly to Metropolitan Mortgage. Instead, he separately promised to the Hoopers to obey the note's and deed of trust's terms. And, he agreed, "Th[is] covenant[ ] . . . shall survive the delivery of the Seller's deed and bill of sale to the Purchaser." Clerk's Papers (CP) at 177. The contract's default clause reads:

> 18. <u>PURCHASER'S DEFAULT.</u> The Purchaser shall be in default under this contract if it (a) fails to observe or perform any term, covenant or condition herein set forth or those of any Prior Encumbrances, or (b) fails or neglects to make any payment of principal or interest or any other amount required to be discharged by the Purchaser precisely when obligated to do so . . . .

CP at 181. The remedies clause reads, in relevant part:

> 19. <u>SELLER'S REMEDIES.</u> In the event the Purchaser defaults under this contract the Seller may, at its election, take the following courses of action:
>  . . . .
> (d) <u>Judicial Foreclosure.</u> To the extent permitted by any applicable statute, the Seller may judicially foreclose this contract as a mortgage, and in connection therewith, may accelerate all of the debt due under this contract if the defaults upon which such action is based are not cured within fifteen (15) days following the Seller's written notice to the Purchaser which specifies such defaults and the acts required to cure the same (within which time any monetary default may be cured without regard to the acceleration) . . . . The purchaser at any foreclosure sale may (but shall not be obligated to), during any redemption period, [exercise certain rights]
>  . . . .

CP at 181-82. Finally, the real estate contract provides,

23. COSTS AND ATTORNEYS' FEES. [I]n the event either party hereto institutes, defends or is involved with any action to enforce the provisions of this contract, the prevailing party in such action shall be entitled to reimbursement by the losing party for its court costs and reasonable attorneys' costs and fees, including such costs and fees that are incurred in connection with any . . . foreclosure . . . appeal, or other proceeding . . . .

CP at 183.

Later Barbanti arranged to pay Metropolitan Mortgage's escrow directly for amounts owed under the note secured by the deed of trust.

Metropolitan Mortgage assigned its interest as payee under the promissory note and beneficiary under the deed of trust to BONY in February 1997. In March 2003, Barbanti stopped paying the portion of the purchase price due under note secured by the deed of trust but continued paying the portion of the purchase price due to the sellers, Hoopers. Barbanti quitclaimed his interest in the property to Royal Pottage on July 17, 2003. Junco Frost Lavinia obtained a judgment lien against the property.

In April 2009, BONY sued, in an earlier action, to foreclose the deed of trust on the property. In its complaint, BONY sought a money judgment and decree of foreclosure against the Hoopers. BONY's complaint named, as defendants, other persons and entities alleged to have an interest in the property, including Barbanti and Royal Pottage.

In August 2010, Barbanti moved to dismiss BONY's foreclosure action as time barred under the statute of limitations. Barbanti admitted he failed to make payments to

escrow to satisfy the note and the underlying deed of trust as required by his real estate contract with the Hoopers.

In September 2010, before the hearing on Barbanti's motion to dismiss, the Hoopers signed a Deed and Seller's Assignment of Real Estate Contract, under which they quitclaimed their interest in the property and assigned their seller's interest in the real estate contract to BONY. BONY did not record the assignment. Thereafter, Barbanti continued to pay to the escrow company, the portion of the purchase price due to the seller under the real estate contract. The escrow agent continued to disburse the payments to the Hoopers, rather than BONY. BONY has never accelerated the debt owed.

At the dismissal hearing on September 24, 2010, BONY asked the court to deny dismissal and allow it to amend its complaint to assert a claim enforcing the real estate contract based upon Barbanti's breach of his obligations under the contract. The trial court orally granted the dismissal motion, apparently denying the amendment request.

On October 28, 2010, BONY filed this second lawsuit to enforce the real estate contract against Barbanti. On October 29, 2010, the court, in the first suit, entered orders: dismissing the bank's foreclosure action as barred by the statute of limitations; directing a reconveyance of the deed of trust; quieting title in "fee ownership" to Royal Pottage; and entering judgment in favor of appellant Barbanti and others for reasonable attorney fees and costs. On appeal, this court, in October 2011, reversed the trial court's order quieting

title in "fee ownership" because the property was still subject to the real estate contract. We also reversed the award of reasonable attorney fees and costs.

Barbanti obtained a payoff quote from the escrow agent. On March 26, 2012, he paid $14,790.45, received the fulfillment deed along with the original real estate contract stamped "PAID IN FULL," and recorded the deed. CP at 167.

In this second lawsuit, the trial court granted BONY summary judgment, judicially foreclosed the real estate contract, and quieted title to the property in the bank's favor.

## LAW AND ANALYSIS

### I. Standing and Real Party in Interest

Appellants contend BONY lacks standing and is not a real party in interest to file this suit to foreclose the real estate contract. They base this contention upon the fact that, despite the Hoopers' assignment of their seller's interest in the real estate contract to the bank, the escrow agent thereafter continued disbursing Barbanti's real estate contract payments to the Hoopers, who continued collecting them without the bank's objection. Appellants also argue that, because the right to receive real estate contract payments is personal property, the party holding the right must memorialize it in a filing under the Uniform Commercial Code (UCC) article 9A, chapter 62A RCW. It is undisputed that the bank failed to do so and, thus failed to perfect its security interest. We do not address whether BONY had standing or was a real party in interest, since appellants waived the right to assert these defenses when they did not assert them in the trial court.

Appellants failed to file an answer to respondent's complaint and thus failed to

6

assert standing and real party in interest as defenses. Appellants did not expressly assert that BONY lacked standing nor was a real party in interest when responding to the bank's summary judgment motion. Appellants contend they indirectly asserted the defenses when, in opposition to BONY's motion, they questioned the validity of the deed and seller's assignment and presented evidence supporting the defenses. Appellants also contend they may raise a standing issue for the first time on appeal because it concerns subject matter jurisdiction.

"The concepts of standing and CR 17(a) real party in interest are often interchanged by our courts. Standing refers to the demonstrated existence of 'an injury to a legally protected right.' 'The real party in interest is the person who possesses the right sought to be enforced.'" *Riverview Cmty. Grp. v. Spencer & Livingston*, 173 Wn. App. 568, 576, 295 P.3d 258 (2013) (footnote omitted) (citations omitted) (quoting *Sprague v. Sysco Corp.*, 97 Wn. App. 169, 176 n.2, 982 P.2d 1202 (1999)) (citing Philip A. Trautman, *Joinder of Claims and Parties in Washington*, 14 GONZ. L. REV. 103, 109 (1978)). "These issues, although analytically distinct, are intertwined . . . ." *Id.*

Generally, appellate courts will not entertain issues raised for the first time on appeal. RAP 2.5(a); *Brundridge v. Fluor Fed. Servs., Inc.*, 164 Wn.2d 432, 441, 191 P.3d 879 (2008); *In re Application by Rapid Settlements, Ltd.*, 166 Wn. App. 683, 695, 271 P.3d 925 (2012); *see also* RAP 9.12. The reason for this rule is to afford the trial court an opportunity to correct errors, thereby avoiding unnecessary appeals and retrials. *Smith v. Shannon*, 100 Wn.2d 26, 37, 666 P.2d 351 (1983). A defendant waives the

right to assert an affirmative defense if he or she fails to raise the defense at the trial court. *City of Seattle v. Lewis*, 70 Wn. App. 715, 718-19, 855 P.2d 327 (1993).

Appellants' presentation of evidence, to the trial court below, that could support the defenses of real party in interest or standing is insufficient to preserve the issues for appeal. Appellants' failure to specifically identify the defenses and provide legal citations in support of the defenses precluded the trial court from intelligently considering the defenses. We need not consider on appeal a theory that the lower court had no effective opportunity to consider and rule upon. *Bellevue Sch. Dist. No. 405 v. Lee*, 70 Wn.2d 947, 950, 425 P.2d 902 (1967); *Commercial Credit Corp. v. Wollgast*, 11 Wn. App. 117, 126, 521 P.2d 1191 (1974).

Both standing and real party in interest are defenses. *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 716, 899 P.2d 6 (1995) (real party in interest); *Trinity Universal Ins. Co. of Kansas v. Ohio Cas. Ins. Co.*, No. 67832-9-I, slip op. at 10 (Wash. Ct. App. Aug. 19, 2013) (standing); *Durland v. San Juan County*, 175 Wn. App. 316, 325, 305 P.3d 246 (2013) (standing). Where an appellant fails to timely raise a real party in interest defense, the defense is waived on appeal. *Nw. Indep. Forest Mfrs.*, 78 Wn. App. at 716. The same goes for standing in cases other than declaratory judgment actions. *See State v. Cardenas*, 146 Wn.2d 400, 404-05, 47 P.3d 127 (2002); *Amalgamated Transit Union Local 587 v. State*, 142 Wn.2d 183, 203-04 n.4, 11 P.3d 762 (2000); *Tyler Pipe Indus., Inc. v. Dep't of Revenue*, 105 Wn.2d 318, 327, 715 P.2d 123,

715 P.2d 128 (1986), *vacated on other grounds*, 483 U.S. 232, 107 S. Ct. 2810, 97 L. Ed. 2d 199 (1987); *Baker v. Baker*, 91 Wn.2d 482, 484, 588 P.2d 1164 (1979).

Contrary to appellants' contention, the doctrine of standing does not implicate the superior court's subject matter jurisdiction. *Trinity Universal*, slip op. at 10; *see Ullery v. Fulleton*, 162 Wn. App. 596, 604-05, 256 P.3d 406, *review denied*, 173 Wn.2d 1003 (2011). Therefore, in Washington, a plaintiff's lack of standing is not a matter of subject matter jurisdiction. *Trinity Universal*, slip op. at 10. In federal courts, a plaintiff's lack of standing deprives the court of subject matter jurisdiction, making it impossible to enter a judgment on the merits. *Fleck & Assocs., Inc. v. City of Phoenix*, 471 F.3d 1100, 1102 (9th Cir. 2006). By contrast, the Washington Constitution places few constraints on superior court jurisdiction. *See* CONST. art. IV, § 6 ("The superior court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court."); *see also Ullery*, 162 Wn. App. at 604. Accordingly, if a defendant waives the defense that a plaintiff lacks standing, a Washington court can reach the merits. *Id.*

## II. Summary Judgment on Default

Appellants contend a genuine issue of material fact exists regarding whether Barbanti defaulted on the real estate contract and the amount of his default. This court reviews a summary judgment order de novo, engaging in the same inquiry as the trial court. *Highline Sch. Dist. No. 401 v. Port of Seattle*, 87 Wn.2d 6, 15, 548 P.2d 1085 (1976); *Mahoney v. Shinpoch*, 107 Wn.2d 679, 683, 732 P.2d 510 (1987). Summary

judgment is proper if the record shows "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." CR 56(c). A genuine issue is one upon which reasonable people may disagree; a material fact is one controlling the litigation's outcome. *Morris v. McNicol*, 83 Wn.2d 491, 494, 519 P.2d 7 (1974); *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). This court construes all facts and reasonable inferences in the light most favorable to the nonmoving party. *Barber v. Bankers Life & Cas. Co.*, 81 Wn.2d 140, 142, 500 P.2d 88 (1972); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

Initially, the moving party must show no genuine issue of material fact exists. *LaPlante v. State*, 85 Wn.2d 154, 158, 531 P.2d 299 (1975). Then, the inquiry shifts and the nonmoving party must show a genuine issue of material fact exists. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989).

On appeal, appellants argue the real estate contract, and Barbanti's obligation to pay the purchase price, merged into the fulfillment deed upon delivery. They cite *Peoples' National Bank v. National Bank of Commerce*, 69 Wn.2d 682, 689-90, 420 P.2d 208 (1966), which states,

> As a general rule, the provisions of a contract for the sale of real estate . . . are considered merged in the execution and delivery of the deed.
> There are exceptions to the merger rule, when the terms of the contract of sale of real estate provide that the contract is not fully performed by the delivery of the deed. Under such circumstances, there is no presumption that either party, in giving or accepting the deed, waives the performance of the remaining terms of the contract.
> The contract here in question falls within the exception to the merger rule. The grantor and grantee were required, by the express terms of the contract, to perform substantial duties subsequent to the execution and

delivery of the deed. The execution and delivery of the deed, therefore, did not constitute a waiver by either party of the performance of the remaining covenants.

*Peoples' National Bank* actually supports BONY's position. The real estate contract between the Hoopers and Barbanti provided that he purchased the property subject to the deed of trust, listed as a prior encumbrance. He agreed the purchase price he must pay included the principal then due under note secured by the deed of trust, which was $133,549.83. He separately promised to obey the note's and deed of trust's terms. And, he agreed, "Th[is] covenant[ ] . . . shall survive the delivery of the Seller's deed and bill of sale to the Purchaser." CP at 177. The real estate contract essentially gave him an obligation, independent from the note and deed of trust, to pay $133,549.83. According to the language of the contract, delivery of the seller's fulfillment deed did not relieve Barbanti of this obligation.

Although the uniform law has not been adopted in Washington, section 1-309 of the Uniform Land Transactions Act provides additional support for our conclusion:

> Acceptance by a buyer or a secured party of a deed or other instrument of conveyance is not of itself a waiver or renunciation of any of his rights under the contract under which the deed or other instrument of conveyance is given and does not of itself relieve any party of the duty to perform all his obligations under the contract.

UNIF. LAND TRANSACTIONS ACT § 1-309, 13 pt. 2 U.L.A. 188 (2002); *see also id.* § 1-309 cmt., 13 pt. 2 U.L.A. 188 ("This section abolishes the doctrine of merger under which the contract of conveyance is 'merged' into the deed . . . . Under this Act, merely accepting a deed does not affect the rights of the parties under their contract.").

In addition to arguing that BONY lacks standing because of its failure to perfect the assignment of the seller's interest in the real estate contract, appellants suggest that BONY may not enforce the real estate contract because it never perfected a security interest with a filing under UCC article 9A, chapter 62A RCW. They cite *In re Freeborn*, 94 Wn.2d 336, 344, 617 P.2d 424 (1980), which states where a real estate contract seller executes a document that both assigns its seller's interest and conveys legal title, "the assignee-grantee must both file pursuant to U.C.C. article 9 . . . *and* record pursuant to RCW 65.08.070 in order to have priority over subsequent lien creditors, purchasers and encumbrancers." But this case does not involve the priority of the deed and seller's assignment. Failing to perfect does not impact the validity or enforceability of the deed and seller's assignment of the real estate contract.

Appellants claim BONY needed to give 15 days notice of default before instituting the mortgage foreclosure, an act BONY did not fulfill. Appellants base this argument on a faulty reading of the real estate contract remedies clause. The clause reads in part, "[T]he Seller may judicially foreclose this contract as a mortgage, and in connection therewith, may accelerate all of the debt due under this contract if the defaults upon which such action is based are not cured *within fifteen (15) days following the Seller's written notice* to the Purchaser . . . ." CP at 182 (emphasis added). Appellants construe this notice requirement as applying to the earlier clause stating, "[T]he Seller may judicially foreclose this contract as a mortgage." CP at 182. A plain reading indicates appellants' interpretation is incorrect. *See Cornish Coll. of the Arts v. 1000 Va. Ltd.*

12

*P'ship*, 158 Wn. App. 203, 231, 242 P.3d 1 (2010) ("Where the terms of a contract are plain and unambiguous, the intention of the parties shall be ascertained from the language employed."). This notice requirement applies solely to the later clause stating "and in connection therewith, may accelerate all of the debt due under this contract. CP at 182. The bank did not accelerate the entire debt. Therefore, the bank was not required to give appellants the notice mentioned in this provision.

Viewing all facts and reasonable inferences in the light most favorable to appellants, no genuine issue of material facts exists regarding whether Barbanti defaulted under the real estate contract. Again, as to the portion of the purchase price due under the deed of trust, Barbanti made no payment since March 8, 2003. The failure to pay constitutes default under the real estate contract. Any other ruling would allow Barbanti and, in turn, Royal Pottage, to avoid a substantial debt they agreed to pay in exchange for ownership of real property.

### III. Summary Judgment on Amount in Default

We agree with appellants that a genuine issue of material fact exists regarding the amount of Barbanti's default. BONY's evidence suggested "Barbanti failed to make at least 72 principal payments of $1,351.65 during the six years following March 8, 2003," which totals $97,318.80 without interest. CP at 315. Appellants' evidence suggested the deed of trust's unpaid balance was "$125,011.72" as of July 9, 2012 or perhaps "$119,499.53" as of April 8, 2009, "together with interest from March 1, 2003 at $21.33 per diem." CP at 207, 309.

13

The trial court's order on summary judgment does not identify any amount in default. Establishment of this amount, by further summary judgment proceedings or trial, if needed, is essential.

BONY chose to foreclose the real estate contract as a mortgage. Where a seller chooses to judicially foreclose a real estate contract as a mortgage, all laws and procedures governing judicial foreclosures of mortgages apply. RCW 61.30.020(1); 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 21.40, at 518 (2d ed. 2004). The procedures include a sale to satisfy amounts owed and the opportunity of the debtor to pay amounts owed before the sale. RCW 61.12.060, .090, .130. The sale cannot occur and appellants' rights are thwarted without the establishment of the amount owed.

IV. Summary Judgment Quieting Title

We also agree with appellants' contention that the trial court erred by quieting title to the property in BONY. To repeat, since BONY elected to foreclose the real estate contract as a mortgage, BONY must follow mortgage foreclosure proceedings. RCW 61.30.020(1) reads, "At the seller's option, a real estate contract may be foreclosed in the manner and subject to the law applicable to the foreclosure of a mortgage in this state." These proceedings include an order of sale after entry of a judgment amount, a sheriff's sale, a possible sale of the property as a whole or in parcels, a possible upset price, a possible deficiency judgment, a possible distribution of sale proceeds to other lienholders, and a right of redemption. *See* ch. 6.23 RCW; RCW 61.12.060-.150.

BONY contends that RCW 61.12.050 frees it from establishing the amount in default and from a judicial sale. The statute reads, "When there is no express agreement in the mortgage nor any separate instrument given for the payment of the sum secured thereby, the remedy of the mortgagee shall be confined to the property mortgaged." This statute does not apply since the real estate contract adopted a particular sum owed.

## V. Attorney Fees on Appeal

Appellants and BONY respectively request an award of reasonable attorney fees and costs on appeal, under RAP 18.1(a), which authorizes such an award if provided by applicable law. Here the real estate contract authorizes such an award to the party prevailing in an enforcement action, including an appeal from a judicial foreclosure.

Two principles interfere with appellants' request. First, we are affirming that a judgment should be entered in favor of BONY, although the amount of the judgment must still be determined. The "prevailing party" for an attorney fees clause in a contract means the party in whose favor the court rendered final judgment. *Riss v. Angel*, 131 Wn.2d 612, 633, 934 P.2d 669 (1997); *Hawkins v. Diel*, 166 Wn. App. 1, 10, 269 P.3d 1049 (2011). Although appellants prevailed on major issues, BONY prevailed on the most important issue. When both parties prevail on a major issue, there may be no prevailing party for attorney fee purposes. *Phillips Bldg. Co. v. An*, 81 Wn. App. 696, 702, 915 P.2d 1146 (1996); *Hawkins*, 166 Wn. App. at 10.

One of the principles interferes in recovery of fees and costs by BONY. Appellants prevailed on major issues, and, if one counted the issues, appellants may have

prevailed on most of the issues. Under these circumstances, we deny all parties an award of reasonable attorney fees and costs.

## CONCLUSION

We affirm the trial court's summary judgment ruling that Barbanti is in default under the real estate contract and that BONY may foreclose on the property. We reverse and remand for further proceedings to determine the amount owed under the contract and to foreclose the property in accordance with mortgage statutes. We deny both parties an award of reasonable attorney fees and costs on appeal.

Affirmed in part, reversed in part, and remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be field for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Brown, J.

_____
Siddoway, A.C.J.

16