[No. 27002-1-II. Division Two. January 4, 2002.]

THE STATE OF WASHINGTON, *on the relation of Donene Munroe, City Council Member for the City of Poulsbo, Plaintiff,* DONENE MUNROE, *Appellant,* v. THE CITY OF POULSBO, ET AL., *Respondents.*

*R. Stuart Phillips*, for appellant.

*James E. Haney* (of *Ogden Murphy Wallace, P.L.L.C.*), *for respondents.*

SEINFELD, J. — This case requires us to determine when an elected public official's resignation from office becomes final, thereby creating a vacancy and preventing the official from withdrawing the resignation. We hold that the amendment to RCW 42.12.010, which added language stating that a vacancy "shall be deemed to occur upon the effective date of the resignation," changes the common-law rule set forth in *State ex rel. Royse v. Superior Court*, 46 Wash. 616, 91 P. 4 (1907). No longer must the governing body accept a resignation before there is a vacancy; rather, a vacancy now occurs upon the resignation's effective date. Thus, we affirm the trial court's dismissal on summary judgment of Donene Munroe's quo warranto action in which she asserted that she had the right to withdraw her oral resignation and be reinstated to the Poulsbo City Council.

## FACTS

On February 16, 2000, the Poulsbo City Council's agenda included a land use hearing related to the "Olhava Project." Munroe was present as a regularly elected member of the Council; her four-year term would expire on December 31, 2003.

A member of the public challenged Munroe's participation in the hearing based on her association with another individual and a nonprofit corporation. In response, Munroe orally resigned, stating:

> I'm sorry, I forgot that I did have that sign up for CarolAnn and, if it's in the best interest of the City, I will step down. And I might as well say that I might as well step down from the Council because I see everything that happens, I'm going to be, that has anything to do with Olhava, I'm going to be asked to recuse myself. So, you can *take this as my formal resignation from the Council.*

Clerk's Papers (CP) at 52 (emphasis added). When one of the other council members asked, "From the Council?", Munroe responded, "That's right." CP at 52. Munroe then left the meeting and the Council continued its business in her absence.

The next morning, February 17, at approximately 8 A.M., Munroe returned her keys and code book to City Hall. But a couple of hours later, she decided that she had made a mistake and called the mayor to say that she wanted to withdraw her resignation. The mayor said that she would get back to Munroe.

Meanwhile, Munroe spoke to the City attorney. He told Munroe that because the resignation had been effective immediately, she could not withdraw it. Munroe then sent the City a letter in which she formalized her request to withdraw her resignation.

On March 1, over Munroe's objection, the Council voted to fill her Council seat. After interviewing six applicants, including Munroe, the Council selected James Henry.

Munroe brought a quo warranto action against the City and Henry and she also sought declaratory and injunctive relief and attorney fees. Upon cross motions for summary judgment, the trial court denied Munroe's motion and granted the defendants' motion as to all of Munroe's claims.

## DISCUSSION

### I. RESIGNATION OF PUBLIC OFFICE

When reviewing a summary judgment decision, we engage in the same inquiry as the trial court. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate if the evidence, viewed in the nonmoving party's favor, shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c); *Schaaf v. Highfield*, 127 Wn.2d 17, 21, 896 P.2d 665 (1995). We will grant the motion if reasonable persons could reach only one conclusion. *Wilson*, 98 Wn.2d at 437.

### A. RCW 42.12.010 and Common-law Rule

The primary dispute centers around the meaning of RCW 42.12.010 and the continued viability of the common-law rule adopted in *Royse*, 46 Wash. at 622-23: "[A]n acceptance of a resignation is necessary in order to relieve an officer of responsibility and to create a vacancy." The *Royse* court held that this rule applied until the legislature provided otherwise. 46 Wash. at 623-24.

At the time of the *Royse* decision, the relevant statute, now RCW 42.12.010, provided that " '[e]very office shall become vacant on the happening of either of the following events before the expiration of the term of such officers: . . . 2. His resignation . . . .' " 46 Wash. at 623 (quoting BALL. CODE, § 1548 (PIERCE's CODE § 4787)). In concluding that this statute did not alter the common-law rule, the *Royse* court noted:

> It is true, it is declared that an office shall become vacant upon the resignation of the incumbent; but nothing is said about the method of effecting a resignation. The silence of the statute in that regard should be construed to mean that the established common law method still obtains, and that a resignation is not complete until it has been accepted by the appointing power.

46 Wash. at 623.

The legislature amended the relevant portion of that statute in 1981. *See* LAWS OF 1981, ch. 180, § 4. It now

provides that "[e]very elective office shall become vacant on the happening of any of the following events: . . . (2) His or her resignation. *A vacancy caused by resignation shall be deemed to occur upon the effective date of the resignation*[.]" RCW 42.12.010(2) (emphasis added).[1]

The parties agree that under *Royse*, a resignation must be accepted before a vacancy is created and, thus, an officeholder may withdraw that resignation prior to acceptance. But the City and Henry assert that the 1981 amendment to RCW 42.12.010 abrogated the common-law rule and replaced it with the rule that a vacancy occurs upon the "effective date of the resignation." RCW 42.12.010(2). They contend that because Munroe's resignation was effective immediately, it immediately created a vacancy. Therefore she could not withdraw her resignation the next day.

 To determine the impact of the 1981 amendment on the common-law rule of *Royse*, we look to legislative intent, discerning it "from the statutory text as a whole, interpreted in terms of the general object and purpose of the legislation." *Group Health Coop. of Puget Sound v. Dep't of Revenue*, 106 Wn.2d 391, 401, 722 P.2d 787 (1986). If the statutory language is plain and unambiguous, the language controls the statute's application. *Rettkowski v. Dep't of Ecology*, 128 Wn.2d 508, 515, 910 P.2d 462 (1996). But if the statute is susceptible of more than one reasonable interpretation, it is ambiguous and subject to judicial construction. *Harmon v. Dep't of Soc. & Health Servs.*, 134 Wn.2d 523, 530, 951 P.2d 770 (1998).

 Generally, we give undefined statutory terms their usual and ordinary meaning unless we find an obvious contrary intent; we refer to a dictionary for the usual and ordinary meaning of words. *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 808, 16 P.3d 583 (2001); *Moldt v. Tacoma Sch. Dist. No. 10*, 103 Wn. App. 472, 477, 12 P.3d

---

[1] RCW 35A.12.050 provides, in part, that the office of a council member becomes vacant as provided in RCW 42.12.010; that vacancy is then to be filled as provided in chapter 42.12 RCW.

1042 (2000). But "[w]here a term is not defined in a statute, it is presumed that the Legislature intended it to mean what it did at common law." *In re Brazier Forest Prods., Inc.*, 106 Wn.2d 588, 595, 724 P.2d 970 (1986). And, as Munroe argues, we will not construe a statute in derogation of the common law absent a clearly expressed legislative intent to do so. *Price v. Kitsap Transit*, 125 Wn.2d 456, 463, 886 P.2d 556 (1994).

Munroe characterizes the *Royse* decision as interpreting the term "resignation" to mean both a tender and an acceptance. Munroe contends that because the legislature did not define "resignation" in the 1981 amendment to RCW 42.12.010, *Royse*'s common-law definition still applies. We disagree.

Although the *Royse* court stated that "a resignation must be accepted in order to complete it and effect the vacancy," the ultimate question in *Royse* was whether the attempted resignation created a vacancy. 46 Wash. at 622. The *Royse* court concluded that there was no vacancy because the council had not accepted the resignation. 46 Wash. at 618, 622-23.

The plain language of the 1981 amendment responds to the same question—what conduct creates a vacancy; but the statutory amendment provides a different answer, namely, a vacancy occurs upon the resignation's effective date.

■■ If, as Munroe contends, the 1981 amendment to RCW 42.12.010 did not affect the *Royse* court's answer to the question of when a vacancy is created, the additional statutory language would be superfluous. But we must give meaning to all statutory language. *City of Seattle v. Dep't of Labor & Indus.*, 136 Wn.2d 693, 698, 965 P.2d 619 (1998). Further, the language of the 1981 amendment is clear and unambiguous: a vacancy occurs upon the resignation's effective date. Thus, we cannot resort to the statutory construction methods that Munroe proposes or to the legislative history she cites.

The facts of Munroe's case further highlights the incompatibility of the *Royse* rule and the 1981 amendment.

Munroe "formally resigned" and left the Council meeting, which then conducted business in her absence, and she returned her code book and keys to the City the next morning. Under RCW 42.12.010, because Munroe's resignation was effective immediately, her seat was vacant immediately. But under *Royse*, because the Council did not formally accept Munroe's resignation, there was no vacancy. In such a conflict, the plain statutory language must control.

Finally, the public policy underpinnings of the *Royse* decision are no longer persuasive. The *Royse* court cited *Edwards v. United States*, 103 U.S. 471, 26 L. Ed. 314 (1880), which held that public office is a burden that the officeholder should not be able to abandon " 'without the consent of the appointing power.' " *Royse*, 46 Wash. at 621 (quoting *Edwards*, 103 U.S. at 474). According to *Edwards*, to abrogate this requirement "would enable every officeholder to throw off his official character at will, and leave the community unprotected." 103 U.S. at 475.

Today, this thinking suggests involuntary servitude. For numerous reasons, we do not deny employees the right to sever their relationship with their employer. *See Arthur v. Oakes*, 63 F. 310, 317-18 (7th Cir. 1894) (compelling an individual to remain in the employment of another invades the individual's natural liberty). *See also Roberts v. Atl. Richfield Co.*, 88 Wn.2d 887, 894, 568 P.2d 764 (1977) (an employment contract indefinite as to duration is terminable at will by either employee or employer). And we do not believe it would benefit the community to mandate service from a public official who is seeking to "throw off his official character." *Edwards*, 103 U.S. at 475.

B. Acceptance and Equitable Estoppel

The City and Henry argue alternatively that the City *did* accept Munroe's resignation by confirming her oral resignation at the Council meeting, by continuing the meeting in her absence, and by accepting her keys and code book the next day. Because we hold that acceptance is unnecessary, we do not address this argument.

Munroe also asserts that the City's earlier actions in formally accepting two other resignations formed a "common basis of understanding" between herself and the City and equitably estopped the City from denying the formal acceptance requirement.

■■ The elements of equitable estoppel are:

[F]irst, an admission, statement, or act inconsistent with a claim afterward asserted; second, action by another in reasonable reliance on that act, statement, or admission; and third, injury to the party who relied if the court allows the first party to contradict or repudiate the prior act, statement, or admission.

*Robinson v. City of Seattle*, 119 Wn.2d 34, 82, 830 P.2d 318 (1992). A party asserting estoppel must prove the elements by clear, cogent, and convincing evidence. *Kramarevcky v. Dep't of Soc. & Health Servs.*, 122 Wn.2d 738, 744, 863 P.2d 535 (1993); *Robinson*, 119 Wn.2d at 82. As the law does not favor the application of equitable estoppel against the government, a party asserting the doctrine in such a case must establish that estoppel is necessary to prevent a manifest injustice and that it would not impair governmental functions. *Kramarevcky*, 122 Wn.2d at 743.

Munroe cites two prior incidents where the City formally accepted resignations; one involved a council member in 1996 and the other involved the Poulsbo mayor in 1998. But Munroe fails to show that she *reasonably* relied on the City's past actions regarding those resignations.

Munroe's conduct suggested that she intended her resignation to be effective immediately, without any further action, when she announced her formal resignation and left the meeting. She did not seek or await the Council's acceptance of her resignation and when she returned her keys and code book to the City the next morning, she confirmed her understanding that her resignation had been effective the previous day.

Furthermore, Munroe indicated an awareness only of the Poulsbo mayor's resignation and, in her letter attempting to

withdraw her resignation, she does not claim that the City had to formally accept her resignation as it did in the mayor's case. Rather, she states that she recalled that the "mayor made a very similar emotional resignation at a council meeting but was allowed to continue in the position until it was convenient for him. I feel that I should be afforded the same opportunity." CP at 221. Munroe's statement does not suggest reasonable reliance on the City's alleged past practice of accepting resignations.

 Munroe also attempts to characterize her statements at the Council meeting as a "tender" of her resignation, thereby apparently suggesting that she expected the City to act upon her "tender" before it became effective. But the record does not support this characterization.

Munroe told the Council to take her statement as her "formal resignation" and her letter of the next day references her "oral" or "verbal resignation." Nothing in these statements suggests a qualified resignation or an expectation of formal action by the Council to accept her "tender." Thus, as equitable estoppel against the government is disfavored, Munroe has not met her burden of establishing reasonable reliance on the City's past actions.

Finally, Munroe contends that she did not abandon her office and, consequently, should not be estopped from challenging her successor's title to the office. But neither the City nor Henry assert that Munroe abandoned her office.

## II. Quo Warranto

The City and Henry also contend that Munroe's sole remedy is her quo warranto action and, thus, the court properly dismissed her requests for declaratory and injunctive relief.

 Title to a public office can be tried only in quo warranto proceedings. *See, e.g., Green Mountain Sch. Dist. No. 103 v. Durkee*, 56 Wn.2d 154, 158-59, 351 P.2d 525 (1960); *State v. Franks*, 7 Wn. App. 594, 596, 501 P.2d 622

(1972). As Munroe's claims for injunctive and declaratory relief are essentially an assertion of title to the Council seat, her exclusive remedy is to try title through quo warranto proceedings. Thus, the trial court properly dismissed her claims for injunctive and declaratory relief on summary judgment. *See Franks*, 7 Wn. App. at 596 ("The proper and exclusive method of determining the right to public office is through a quo warranto proceeding.").

## III. Attorney Fees

Munroe requests her attorney fees for trial and on appeal, citing RCW 49.48.030,[2] RCW 7.56.040,[3] and the exposure to litigation rule. The City and Henry contend that they are entitled to their attorney fees as prevailing parties, citing RAP 14.3.

Because we conclude that the trial court properly dismissed Munroe's claims on summary judgment, she is not entitled to fees. As the City and Henry provide little support for their attorney fee request other than citing RCW 4.84.080 and RAP 14.3, we decline to award fees. But as substantially prevailing parties under RAP 14.2, RAP 14.3

---

[2] RCW 49.48.030 provides:

In any action in which any person is successful in recovering judgment for wages or salary owed to him, reasonable attorney's fees, in an amount to be determined by the court, shall be assessed against said employer or former employer: PROVIDED, HOWEVER, That this section shall not apply if the amount of recovery is less than or equal to the amount admitted by the employer to be owing for said wages or salary.

[3] RCW 7.56.040 provides: "Whenever an information shall be filed against a person for usurping an office, by the prosecuting attorney, he shall also set forth therein the name of the person rightfully entitled to the office, with an averment of his right thereto; and when filed by any other person he shall show his interest in the matter, and he may claim the damages he has sustained."

and RCW 4.84.080,[4] they are entitled to statutory attorney fees and costs upon a proper motion.

MORGAN and HOUGHTON, JJ., concur.

---

[4] RAP 14.2 provides in part: "A commissioner or clerk of the appellate court will award costs to the party that substantially prevails on review, unless the appellate court directs otherwise in its decision terminating review."

RAP 14.3(a) provides in part: "Only statutory attorney fees and the reasonable expenses actually incurred by a party for the following items which were reasonably necessary for review may be awarded to a party as costs: [designating items]."

RCW 4.84.080 provides: "When allowed to either party, costs to be called the attorney fee, shall be as follows: (1) In all actions where judgment is rendered, one hundred twenty-five dollars. (2) In all actions where judgment is rendered in the supreme court or the court of appeals, after argument, one hundred twenty-five dollars."