[No. 28726-2-III.    Division Three.    July 19, 2011.]

ROD ULLERY ET AL., *Respondents*, v. BILLY L. FULLETON ET AL., *Appellants*.

**598**

*James A. Perkins* (of *Larson Berg & Perkins PLLC*), for appellants.

*Charles E. Watts* (of *Oseran Hahn Spring Straight Watts PS*), for respondents.

¶1 SIDDOWAY, J. — We are presented in this case with the issue of whether a party whose claim was once dismissed on the basis of a curable standing defect as well as a failure of proof on a substantive element is barred by the doctrine of issue preclusion from curing the standing defect and pursuing the claim in a second action. We conclude that Rod and Dianne Ullery have not demonstrated that dismissal in a prior action of Billy and Alice Fulleton's breach of contract counterclaim asserted in this action was by a final judgment on the merits or that an identical issue was determined. We therefore reverse the trial court's dismissal of the counterclaim and related rulings and remand for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

¶2 In July 2002, Rod and Dianne Ullery entered into a reclamation agreement with Fulleton-Pacific Construction, also known as Patrick R. Fulleton (Pat[1]), providing that Pat would reclaim and restore three placer mining claims owned by the Ullerys to their premining condition. The agreement was made after Pat submitted a bid, estimating the cost of the work at $248,300. Rather than cash payment, the reclamation agreement provided that the Ullerys would compensate Pat by transferring certain mining equipment as well as the Ullerys' interest in the Black Jack

---

[1] We frequently refer to three Fulleton family members by their first names for clarity purposes. No disrespect is intended.

and Last Chance mining claims upon completion. The parties agreed that the reclamation work would be deemed complete when approved by the Washington State Department of Natural Resources and the Washington State Department of Fish and Wildlife.

¶3 Pat and his brother Billy Fulleton entered into a separate agreement two months later, which provided that Pat would supply the equipment needed to perform the reclamation agreement with the Ullerys and Billy would physically perform the required reclamation. Pat and Billy agreed that once the work was complete, the property transferred by the Ullerys to Pat would in turn be transferred to Billy.

¶4 Although the reclamation work appeared to be substantially completed by December 2002, the Ullerys did not quitclaim title as required by the reclamation agreement. Pat retained a lawyer, several demand letters were exchanged, and Pat and Billy performed additional services claimed by the Ullerys to be required. Yet the Ullerys persisted in their refusal to convey title to the claims.

¶5 On January 26, 2004, Pat and Billy entered into an agreement dividing and documenting their respective interests in a number of joint business dealings, including the reclamation contract with the Ullerys. With respect to the reclamation contract, the brothers' agreement provided that Pat would furnish Billy "as soon as possible a deed and any after acquired title to the [Black Jack] and the Last Chance Mining Claim." Clerk's Papers (CP) at 271. Pat also agreed to assign any liens, agreements, acquired interests, or settlements to Billy.

¶6 Billy filed suit against the Ullerys on February 7, 2005 for breach of the reclamation agreement. He averred that he had been assigned all of Pat's rights, claims, and causes of action against the Ullerys under the agreement. In answering, the Ullerys asserted affirmative defenses of lack of standing, that Billy was not the real party in interest, and that Billy had failed to join an indispensable

party. Neither Billy nor the Ullerys undertook to make Pat a party to the suit.

¶7  A bench trial was held on June 19, 2007. In its letter ruling sent to the parties' lawyers shortly following trial, the court concluded that Billy lacked standing to sue because the agreements between the brothers amounted, at best, to Pat's agreement to make a future assignment of his rights under the reclamation agreement. The court also noted that even if Billy had standing, he had not presented sufficient evidence that the contract had been performed because he had not demonstrated that the Department of Fish and Wildlife was satisfied with the reclamation work.

¶8  In response to the court's letter, Billy procured a posttrial assignment from Pat and a letter from the Department of Fish and Wildlife confirming its satisfaction with the reclamation work. He submitted both to the court in support of a motion to reopen under CR 59(g) filed on August 10, 2007. The Ullerys opposed the motion. The court denied the motion to reopen and entered the proposed findings and conclusions and a judgment dismissing Billy's claims with prejudice. The court's second conclusion of law held that Billy lacked standing. Its third held that even if standing existed, Billy had not shown that the work performed under the reclamation agreement had received the necessary approvals. Billy did not appeal.

¶9  Shortly thereafter, the Ullerys filed this ejectment proceeding against Billy and Alice Fulleton, Billy's wife, seeking to terminate the Fulletons' possession of a portion of the Black Jack mining claim. Billy and Alice responded by counterclaiming for breach of the reclamation agreement, this time relying on the assignment from Pat procured following the first trial. Pat Fulleton and Fulleton-Pacific Corp. joined the suit as third party plaintiffs, also alleging breach of the reclamation agreement in case Billy were again found to lack standing to sue.

¶10  The Ullerys promptly filed a motion for judgment on the pleadings, arguing that Billy and Pat were barred by res judicata and collateral estoppel from enforcing the contract.

The court denied the motion. In its order denying judgment on the pleadings, it stated that it was now "confident from the evidence considered that the reclamation work has been fully and satisfactorily completed as contemplated by the reclamation contract, and that the Ullery[ ]s have not *as of yet* performed as required by said contract." CP at 235. It found that the issues in this second action were not identical to those decided in the 2005 action and concluded that issue preclusion was not a bar. *Id.* The case proceeded to discovery.

¶11 On September 3, 2009, the Ullerys deposed Pat, who testified that he had been aware of Billy's 2005 action against the Ullerys for breach of the reclamation agreement and had never objected to Billy's pursuing it in light of the brothers' understanding that Billy was going to receive the mining claims. Armed with the deposition testimony, the Ullerys again moved for summary judgment on res judicata and collateral estoppel grounds, arguing that Pat's deposition established that Pat and Billy had been in privity with respect to the 2005 suit. This time, the trial court granted the Ullerys' motion and dismissed all claims then pending against the Ullerys. A letter sent to counsel by the trial court explained its decision as follows:

> When this court heard the trial that Mr. Billy Fulleton brought against the Ullerys in June 2007 Mr. Patrick Fulleton did not participate in any fashion. In November 2007 the court was unclear of the exact nature of Mr. Patrick Fulleton's knowledge of the extent of the litigation, and so in an effort to give Mr. Patrick Fulleton an opportunity to "have his day in court" the court declined to grant judgment on the pleadings. However, at this point it has become obvious, through the deposition of Mr. Patrick Fulleton, that he knew all along that his brother was prosecuting the claim against the Ullerys, and that in fact Billy was essentially prosecuting the claim for the benefit of Patrick. Now that this fact has become indisputable, it would be wholly inequitable and totally unfair to subject the Ullerys to a second trial.

CP at 472.

¶12 A judgment summary contained in the judgment for attorney fees and costs indicated that the court dismissed the Fulletons' counterclaim against the Ullerys on the basis of collateral estoppel. The trial court also ruled in the Ullerys' favor in the ejectment action. A motion for reconsideration was denied. Alice and the estate of Billy Fulleton timely appealed the trial court's dismissal of their breach of contract counterclaim and the judgment in favor of the Ullerys.

## ANALYSIS

### I

¶13 The Fulletons argue that several essential elements of collateral estoppel were not established by the Ullerys.

¶14 The preclusive effect of a judgment is defined by claim preclusion and issue preclusion. Collateral estoppel, modernly referred to as issue preclusion, bars relitigation of an issue in a subsequent proceeding involving the same parties. It is distinguished from claim preclusion, or res judicata, in that instead of preventing a second assertion of the same claim or cause of action, it prevents a second litigation of *issues* between the parties, even though a different claim or cause of action is asserted. *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 306, 96 P.3d 957 (2004).

¶15 For issue preclusion to apply, the Ullerys, as the parties seeking application of the doctrine, must establish that (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding; (2) the earlier proceeding ended in a judgment on the merits; (3) the party against whom issue preclusion is asserted was a party to, or in privity with a party to, the earlier proceeding; and (4) application of issue preclusion does not work an injustice on the party against whom it is applied. *Id.* at 307; *State v. Williams*, 132 Wn.2d 248, 254, 937 P.2d 1052 (1997). A court may apply issue preclusion only if all

four elements are met. *Clark v. Baines*, 150 Wn.2d 905, 913, 84 P.3d 245 (2004). Whether issue preclusion applies is an issue of law that we review de novo. *Christensen*, 152 Wn.2d at 305.

¶16 The Fulletons contend that three elements of collateral estoppel are absent in this case: the first, because the acts of assignment relied upon in the two suits are not identical; the second, because the action brought in 2005 did not result in a final decision on the merits inasmuch as the trial court found Billy did not have standing to sue; and the third, because application of the doctrine will work an injustice on them. The most clearly absent elements in this case are the second, a prior judgment on the merits, and the first, the identity of issues. Because the Ullerys were required to demonstrate the existence of both elements, the absence of either warrants reversal.

¶17 *Judgment on the merits.* In the 2005 action, the Ullerys asserted the affirmative defense of Billy's lack of standing and prevailed on that issue. They nonetheless argue that the trial court decided more than the issue of standing; it also found that Billy did not demonstrate that the reclamation work was performed to the satisfaction of the Department of Fish and Wildlife, a condition precedent to recovery and therefore fatal to his claim. They also point out that the trial court dismissed Billy's claims with prejudice. From these facts, and the fact that the judgment was never appealed, they argue that the court's determination that there was a failure by the Fulletons to perform satisfies the second element of issue preclusion: a final judgment on the merits.

¶18 In some courts—those, such as the federal courts, whose authority is limited to deciding cases and controversies—a plaintiff's lack of standing deprives a court of subject matter jurisdiction, making it impossible to enter a judgment on the merits. *Fleck & Assocs. v. City of Phoenix*, 471 F.3d 1100, 1102 (9th Cir. 2006) (recognizing that when a plaintiff lacks standing, the district court lacked subject matter jurisdiction to address the merits of the claim and

should have dismissed it without prejudice on that ground alone); *cf. Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998) (" 'Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.' " (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514, 19 L. Ed. 264 (1868))). But article IV, section 6 of the Washington Constitution does not exclude any sort of causes from the jurisdiction of its superior courts, leaving Washington courts, by contrast with federal courts, with few constraints on their jurisdiction. *Krieschel v. Bd. of County Comm'rs*, 12 Wash. 428, 439, 41 P. 186 (1895); Philip A. Talmadge, *Understanding the Limits of Power: Judicial Restraint in General Jurisdiction Court Systems*, 22 SEATTLE U. L. REV. 695, 708-09 (1999). Accordingly, if a defendant waives the defense that a plaintiff lacks standing, a Washington court can reach the merits. Talmadge, *supra*, at 718-19 (citing *Tyler Pipe Indus., Inc. v. Dep't of Revenue*, 105 Wn.2d 318, 327, 715 P.2d 123 (1986), *vacated on other grounds*, 483 U.S. 232, 107 S. Ct. 2810, 97 L. Ed. 2d 199 (1987)).

¶19 However where, as here, a defendant does not waive the defense and obtains the trial court's determination that a plaintiff lacks standing, that determination and the doctrine of standing prohibit the plaintiff from raising another's legal rights. *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 138, 744 P.2d 1032, 750 P.2d 254 (1987). It is improper for a plaintiff lacking standing to assert the rights of other parties or nonparties; its claims fail on account of its lack of standing. *Id.* Thus, while not a matter of subject matter jurisdiction, the claims of a plaintiff determined to lack standing are not his or hers to assert and cannot be resolved in whole or in part on the merits. *Cf. Skagit Surveyors & Eng'rs, LLC v. Friends of Skagit County*, 135 Wn.2d 542, 580, 958 P.2d 962 (1998) (Talmadge, J., dissenting) (a dismissal due to lack of standing is tantamount to a finding that the trial court lacks subject

matter jurisdiction to hear the claim). Having found that Billy lacked standing, the trial court should not have proceeded to the merits. *Id.* at 556 (recognizing that "[l]ack of jurisdiction over the subject matter renders the superior court powerless to pass on the merits of the controversy brought before it").

¶20 The Ullerys nonetheless argue that even if the trial court should not have proceeded to the merits, it did; therefore, because Billy did not appeal, the court's determination of the performance issue on the merits is final and binding. The Fulletons respond that in the second action, the trial court "initially and correctly" determined that its decision in the 2005 action was not a judgment on the merits, but only procedural. Br. of Appellant at 16-17 (citing CP at 235). The most obvious problem with this argument is, as the Ullerys point out, that the trial court later changed its mind. It eventually dismissed the action below on the basis of its earlier dismissal of the 2005 action. Br. of Resp'ts at 5-6 (citing CP at 476).

¶21 Regardless of the trial court's construction of its 2005 order and judgment of dismissal, prudential considerations of justiciability prevent a judgment of dismissal based on lack of standing from constituting a judgment on the merits. *Restatement (Second) of Judgments* § 20(1)(a) (1982) provides that "[a] personal judgment for the defendant, although valid and final, does not bar another action by the plaintiff on the same claim ... [w]hen the judgment is one of dismissal for lack of jurisdiction, for improper venue, or for nonjoinder or misjoinder of parties." Courts considering the issue have treated a lack of standing as the same sort of threshold justiciability issue, preventing the judgment as operating as a bar. *See, e.g., Cayer Enters., Inc. v. Dimasi*, 84 Conn. App. 190, 852 A.2d 758, 760-61 (2004) (holding that judgments based on want of jurisdiction, want of maturity, failure to prosecute, unavailable or inappropriate relief or remedy, or lack of standing are not rendered on the merits; collecting cases); *Batterman v. Wells Fargo Ag Credit Corp.*, 802 P.2d 1112, 1118 (Colo. App.

1990) (collecting cases); *cf. Skagit Surveyors*, 135 Wn.2d at 580 (Talmadge, J., dissenting) (treating standing issue as tantamount to jurisdictional issue); *Nat'l Elec. Contractors Ass'n v. Riveland*, 138 Wn.2d 9, 42, 978 P.2d 481 (1999) (Talmadge, J., dissenting) (discussing principles of justiciability as including whether the litigants have real interests in the outcome). Comments to the *Restatement* further provide that it does not change the result that the trial court denominated its dismissal as being "with prejudice," noting that "a dismissal on any of these grounds is so plainly based on a threshold determination that a specification that the dismissal will be a bar should ordinarily be of no effect." RESTATEMENT § 20 cmt. d.

¶22 Finally, it does not change the result that the trial court dismissed the case not only for lack of standing but also on an alternative ground that would, standing alone, operate as a bar. The *Restatement* provides that when a dismissal is based on two or more determinations at least one of which, standing alone, would not render the judgment a bar to another action on the same claim, then in such a case, if the judgment is one rendered by a court of first instance, it should not operate as a bar. *Id.* § 20 cmt. e. As explained by the comments,

> Even if another of the determinations, standing alone, would render the judgment a bar, that determination may not have been as carefully or rigorously considered as it would have if it had been necessary to the result, and in that sense it has some of the characteristics of dicta. And, of critical importance, the losing party, although entitled to appeal from both determination[s], may be dissuaded from doing so as to the determination going to the "merits" because the alternative determination[ ], which in itself does not preclude a second action, is clearly correct. The rules of res judicata should not encourage or foster appeals in such instances.

*Id.*; *see accord id.* § 27 cmt. i. This rationale applies to the facts of this case. The trial court's determination in the 2005 action that the 2002 and 2004 agreements between Pat and Billy were at best promises of a future assignment was

almost certainly correct. Given that, the most prudent course of action for Billy was not to appeal but to secure a valid assignment and proceed on the basis of that new assignment.

¶23 Accordingly, the 2005 judgment was not a final judgment on the merits.

■ ¶24 *Identity of issues.* The fact that different issues are presented in the two actions is an additional and independent basis for reversal. In the 2005 action, the court concluded that Billy lacked standing to enforce the reclamation agreement based on two acts of assignment presented by Billy: (1) a September 4, 2002 "Memorandum of Understanding" to Billy from Fulleton-Pacific Construction, providing that upon completion of the reclamation work "your invoice will become a payable from F2M, LLC on your behalf," CP at 169, and (2) a January 26, 2004 agreement providing that Pat would grant to Billy, "free and clear," a bill of sale to the " 'Old Mining Equipment' per Ullery Agreement" and would "[f]urnish as soon as possible a deed and any after acquired title to the . . . Ullery Parcel #53 and the Last Chance Mining Claim" and "[a]ssign any liens, agreements, acquired interests or settlements to Bill." CP at 170-71.

¶25 In this second action, the Fulletons relied on a different act of assignment, the July 2007 assignment entered into after trial of the 2005 action, which provided in pertinent part:

> In partial consideration for the purchase of Bill's ownership interest in F2M, L.L.C., the transfer of which the parties stipulate and agree has already lawfully occurred, Pat hereby and unconditionally assigns, transfers and conveys to Bill, all of his rights and remedies arising under that certain Reclamation Agreement dated June 30, 2002. . . . This assignment is intended to include, but not necessarily be limited to, the assignment of the right to receive payment from Rod Ullery and Dianne Ullery, husband and wife, pursuant to the attached Reclamation Agreement, as well as any and all claims or causes of action to enforce payment arising under the Reclamation

Agreement or to otherwise recover damages arising from a failure to pay.

CP at 45-46. Because the two cases relied upon different acts of assignment, the cases presented distinguishable standing issues.

¶26 The Ullerys nonetheless argue that issue preclusion should operate to prevent Billy from offering *any* proof of assignment, even one executed following the prior trial, since the brothers had an agreement in principle to the assignment that could have been properly documented earlier and offered in the 2005 action. Issue preclusion precludes only those issues that were actually litigated and determined in a prior action, however; it does not operate as a bar to matters that could have been raised in prior litigation but were not. *McDaniels v. Carlson*, 108 Wn.2d 299, 305, 738 P.2d 254 (1987).

¶27 The Ullerys also argue that a more important issue *was* identical, however: they represent that the trial court conclusively determined that the contractor's obligations under the reclamation agreement (i.e., Pat's, or by assignment, Billy's) were never performed. As discussed above, the trial court should never have reached the performance issue in the 2005 action, having determined that Billy lacked standing. But assuming that a performance issue was properly resolved by the court in the 2005 action, the Ullerys' argument overlooks an explicit distinction made by the trial court between that performance issue and the performance issue presented in this second action. In his November 2007 order denying judgment on the pleadings in this action, the trial judge—and the same trial judge presided in both cases—makes clear that he regarded the performance issues between the two cases as different, stating:

> In the previous case the court concluded that Billy Fulleton did not have the right to compel the Ullerys to fulfill their obligations under the reclamation contract, and that Billy Fulleton had not established that the conditions precedent

(which would trigger the Ullerys to perform) had been performed. The court did not find that Billy Fulleton, Patrick Fulleton, or [Fulleton-Pacific Construction] had *not* fulfilled their obligations under the contract, or that Patrick Fulleton or [Fulleton-Pacific Construction] could not establish performance under the contract.

CP at 235. From this and other distinctions, the court concluded that "the issues subject to determination in this case are not identical to those issues decided in the previous matter." *Id.* The Ullerys have not assigned error to the order denying judgment on the pleadings.

¶28 We recognize that the court's distinction between the performance issue in the two cases seems irreconcilable with its later dismissal of the Fulletons' counterclaim in this second case on issue preclusion grounds. But in dismissing the counterclaim in this case, the court's decision on summary judgment never retreated from this earlier identification of this difference in the issues. Nor do the Ullerys, who have the burden of demonstrating that the issues in the two cases are identical, explain why we should disregard the court's distinction. It was made by the trial court in a November 2007 order, which we presume accurately characterizes findings it entered only three months earlier.

¶29 We attribute the court's seemingly irreconcilable dismissal of the Fulletons' counterclaim to the confusing and flawed summary judgment argument presented by the Ullerys and accepted by the court, apparently reluctantly.[2] The Ullerys' motion for summary judgment presented only one issue—privity—and treated it as controlling. The Ullerys' theory in moving for summary judgment, as confirmed to us during oral argument, was that in the 2005 trial Billy actually *did* have standing; he simply did not

---

[2] In the report of final proceedings in this matter, the trial court expressed frustration; noted that it viewed the result in this action as required by "legal technicalities" and inequitable; and even stated, having recognized that the matter would be appealed, that "I hope I get turned around, to tell you the truth." Report of Proceedings at 24-25.

prove it, just as he did not prove Pat's full performance of the contract. In this second action, after taking Pat's deposition, the Ullerys claim to have learned that Pat had a level of familiarity with Billy's 2005 action that they contend amounted to privity. Through their summary judgment, they sought to establish that there was privity in the 2005 action, that Pat's rights—direct or as assigned—were therefore before the court in the 2005 action, and that Pat's rights should be deemed foreclosed by the judgment dismissing Billy's claims.

¶30 This argument fails for more reasons than require discussion. Suffice it to say that the Ullerys are bound by the unappealed final determination in the 2005 action that Billy lacked standing. And if, through privity, they *could* bind Pat's interest to the outcome of Billy's 2005 case,[3] they would bind his interest only to the court's actual findings and conclusions, since they never moved the court on the basis of Pat's deposition to reopen the 2005 case and revise them. The trial court's construction in this case of its finding in the 2005 action is that "[t]he court did not find that Billy Fulleton, Patrick Fulleton, or [Fulleton-Pacific Construction] had *not* fulfilled their obligations under the contract, or that Patrick Fulleton or [Fulleton-Pacific Construction] could not establish performance under the contract." *Id.* This finding, which stands unchallenged by the Ullerys, does not preclude the Fulletons from seeking to establish performance in this second action.

¶31 In light of our conclusion that the first and second elements of collateral estoppel do not apply, we need not reach the Fulletons' argument that the application of collateral estoppel would work an injustice on them.[4]

---

[3] Which we question, but need not reach; *see infra* note 5.

[4] The Ullerys do not separately argue that the trial court could properly have dismissed this second action on claim preclusion grounds, although they occasionally couch their arguments on appeal in terms of claims being barred, rather than issues being conclusively determined. Our conclusion that there was no final judgment on the merits dispenses with any claim preclusion issue. Claim

## II

¶32 We also need not reach the Fulletons' argument of judicial estoppel. As earlier observed, the Ullerys argued below and on appeal that because Pat was aware of Billy's 2005 lawsuit he was in "privity"; from that, they argue that Pat's own rights under the reclamation agreement, and by extension, those that could be acquired by Billy through the 2007 assignment, were also decided in the 2005 action.[5] The Fulletons argue that the Ullerys should be judicially estopped from arguing that Pat's rights under the contract were at issue in the 2005 action where the very premise they urged in seeking dismissal of that lawsuit was Pat's interests were *not* before the court. The parties devote much of their briefing to this, and the issue of privity, but we need not address either. Privity bears only on *one* essential element of issue preclusion. The Ullerys' failure to demonstrate two other essential elements compels reversal.

## III

¶33 Both parties request attorney fees on appeal. The reclamation agreement contains the following provision:

- If a dispute arises, this agreement shall be interpreted and resolved in Kittitas County[ ] under the laws of the State of Washington.

---

preclusion also requires a valid final judgment on the merits to be applicable. *Pederson v. Potter*, 103 Wn. App. 62, 67, 11 P.3d 833 (2000), *review denied*, 143 Wn.2d 1006 (2001).

[5] *But cf. Taylor v. Sturgell*, 553 U.S. 880, 884, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008) (" 'It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process' " (quoting *Hansberry v. Lee*, 311 U.S. 32, 40, 61 S. Ct. 115, 85 L. Ed. 22 (1940))); *Loveridge v. Fred Meyer, Inc.*, 125 Wn.2d 759, 764, 887 P.2d 898 (1995) (privity is established in cases where a person is in actual control of litigation or substantially participates in it; mere awareness of proceedings is not sufficient to place a party in privity with a party to a prior proceeding). Pat's uncontested deposition testimony was that he did not help his brother fund or prepare for the lawsuit, nor did he discuss the suit with him or testify in the 2005 trial. CP at 292-94.

- The prevailing party shall receive[ ] reasonable attorney's fees, and court costs in the event that judgment must be, and is, obtained to enforce this agreement or any breach thereof.

CP at 76. While the Fulletons' counterclaim has survived summary judgment, the parties' claims have not yet been decided on the merits. "Where a party has succeeded on appeal but has not yet prevailed on the merits, the court should defer to the trial court to award attorney fees." *Riehl v. Foodmaker, Inc.*, 152 Wn.2d 138, 153, 94 P.3d 930 (2004). As substantially prevailing parties on appeal under RAP 14.2, the Fulletons are entitled to an award of costs. *State ex rel. Munroe v. City of Poulsbo*, 109 Wn. App. 672, 682-83, 37 P.3d 319 (2002).

¶34 We reverse the trial court's summary judgment, ejectment judgment, and judgment for attorney fees and costs and remand for further proceedings.

SWEENEY and BROWN, JJ., concur.

Review denied at 173 Wn.2d 1003 (2011).