FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 SEP 23 AM 8: 29



## IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| IN RE THE CUSTODY OF: | ) |
| | ) No. 69757-9-I |
| A.V.X.M. and T.M.X. | ) |
| | ) |
| Minor Children, | ) |
| | ) |
| ADAM MARTIN, | ) DIVISION ONE |
| JERRI LYNN MARTIN, | ) |
| TAE SAVON XAYKOSY, | ) |
| | ) |
| Respondents, | ) |
| | ) UNPUBLISHED OPINION |
| v. | ) |
| | ) |
| PHET XAYKOSY, | ) |
| | ) |
| Appellant. | ) FILED: <u>September 23, 2013</u> |

SPEARMAN, A.C.J. — A.V.X.M. and T.M.X. were aged two and four when their mother was incarcerated. At that time, their father lacked the interest and ability to parent the children. Jerri Martin, the boys' paternal grandmother, petitioned the court for nonparental custody. Phet Xaykosy, the boys' maternal grandmother, intervened, seeking nonparental custody or, in the alternative, visitation with the children. The trial court granted Martin's petition. Xaykosy appeals, contending that the trial court erred in denying her request for residential time. Because substantial evidence supports the trial court's

conclusion that residential time with Xaykosy was not in the children's best interest, we affirm.

## FACTS

On August 13, 2011, the mother of A.V.X.M. and T.M.X. was incarcerated for stabbing their father. Their father was neither willing nor able to properly parent them and the boys soon found themselves without the care of either parent. Prior to that, the children had lived in the home of their maternal grandmother, Phet Xaykosy, along with both parents and several members of their extended family. The boys also had an ongoing relationship with their paternal grandmother, Jerri Martin, whom they visited regularly. Xaykosy and Martin stepped in to care for the boys when their mother was incarcerated.

Initially, Xaykosy cared for the children, who already lived in her home. Then, on October 4, 2011, Martin filed a petition for nonparental custody.[1] On November 23, 2011, the trial court found adequate cause warranting a trial on Martin's petition and granted Martin temporary custody. On March 14, 2012, Xaykosy was allowed to intervene in Martin's action and to file her own petition for nonparental custody. The court also granted Xaykosy supervised visitation with the children, pending a final order. Xaykosy filed her petition on April 4, 2012. The two petitions were consolidated for trial.

---

[1] Chapter 26.10 RCW sets forth the provisions for nonparental actions for child custody.

Just prior to trial, Martin asked the court to dismiss Xaykosy's petition based on discovery answers implying that Xaykosy was seeking third-party visitation rather than custody. The trial court denied the motion based on Xaykosy's representation that she in fact was pursuing custody. The trial court further ruled that if Xaykosy was denied custody, she likely had no standing to seek visitation with the children because Washington's third party visitation statutes had been ruled unconstitutional. The trial court then limited the issue at trial to the custody of the children, not visitation as between Martin and Xaykosy.

After a five-day trial, the trial court awarded custody to Martin, finding continued placement with her to be in the best interests of the children "from the standpoint of stability, the prospects for additional educational accomplishment, health care, physical protection, future growth and development, love and affection, as well as the prospect for maintaining the greatest likelihood of the boys' continued future contact with both of their biological parents[.]" Verbatim Report of Proceedings (VRP) (11-30-12) at 8.

Despite the trial court's pretrial assertion that it would not rule on the issue of Xaykosy's visitation, it noted in its findings of fact and conclusions of law that visitation between the children and Xaykosy would not be in the children's best interests. The trial court further ordered that "[n]o terms for visitation or contact with the children shall be provided. . . ." Clerk's Papers (CP) at 105.

In its oral ruling, the trial court noted several troubling reasons why Xaykosy's home was "not a healthy environment for raising these two boys."

3

VRP (11/30/13) at 3. The trial court expressed concern over Xaykosy's parenting abilities, noting, for example, that while the children were in her care, they had been found playing with knives and machetes that she left accessible to them. The trial court observed that while Xaykosy denied the allegation that she inappropriately touched the children, she was aware that the children "exhibit[ed] sexualized behavior," but nevertheless minimized the significance of this behavior. VRP (11/30/12) at 4. Lastly, the court emphasized the domestic violence that occurred within the Xaykosy family, which Xaykosy "minimized." VRP (11/30/12) at 5. The trial court found that domestic violence was a "recurrent problem in the Xaykosy household, I suspect it will remain that way." VRP (11/30/12) at 7.

Xaykosy appeals the denial of her request for residential time.

## DISCUSSION

Xaykosy first argues that she is entitled to residential time under Washington's nonparental visitation statutes, RCW 26.10.160(3) and RCW 26.09.240. She acknowledges that the statutes have been declared unconstitutional, in In re Parentage of C.A.M.A., 154 Wn.2d 52, 109 P.3d 405 (2005). But, she argues that C.A.M.A. is inapplicable to her because that case involved the visitation rights of a grandparent as against a fit parent. The argument is without merit. It is well established that "[t]he effect of holding a statute facially unconstitutional 'is to render the statute totally inoperative.'" In re the Matter of the Parentage of L.B., 155 Wn.2d 679, 714, 122 P.3d 161 (2005)

4

No. 69757-9-I/5

(quoting City of Redmond v. Moore, 151 Wn.2d 664, 669, 91 P.3d 875 (2004)).

Xaykosy next argues that in the absence of statutory authority permitting a nonparent to seek visitation with children placed into the custody of another nonparent, a court may nonetheless grant her relief based on equitable principles. Xaykosy is correct that in limited circumstances, our courts have relied on equitable principles to allow nonparents to seek parental rights as against a fit parent. See In re L.B., 155 Wn.2d at 709 (relying on equitable principles to recognize the existence of common law *de facto* parents and holding that where *de facto* parental status is established, the *de facto* parent attains a status equal to that of the child's legal parent). However, she cites no authority where such relief was granted in the cicumstances presented here.

Moreover, even if such relief were available, it would be of no help to Xaykosy. Prior to denying Xaykosy's request in this case, the trial court correctly applied the best interest of the children standard, found that visitation was not in A.V.X.M. and T.M.X.'s best interest, and explained the facts supporting its finding extensively on the record. VRP (11/30/12) at 3-7. Furthermore, because Xaykosy does not assign error to the trial court's findings, including that visitation was not in the best interest of the children, the findings are "verit[ies] on appeal." Cowiche Canyon Conservancy v. Bosley, 118 Wn. 2d 801, 808, 828 P.2d 549 (1992)

5

(quoting Nearing v. Golden State Foods, Corp., 114 Wn.2d 817, 818, 792 P.2d 500 (1990)).

## Attorney's Fees

Xaykosy requests an award of attorney's fees and costs pursuant to RAP 14.2 and 14.3. Because neither provision provides a legal basis for such an award we decline her request. See State ex rel. Munroe v. City of Poulsbo, 109 Wn. App. 672, 682, 37 P.3d 319 (2002).

Martin also requests an award of attorney's fees as a sanction for filing a meritless appeal. RAP 18.9(a) authorizes the appellate court, on its own initiative or on motion of a party, to order a party or counsel who files a frivolous appeal to pay sanctions, including an award of attorney fees and costs to the opposing party. Yurtis v. Phipps, 143 Wn. App. 680, 696, 181 P.3d 849 (2008) (citing Rhinehart v. Seattle Times, Inc., 59 Wn. App. 332, 342, 798 P.2d 1155 (1990)). "An appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ and that it is so devoid of merit that there is no possibility of reversal. And we resolve all doubts to whether an appeal is frivolous in favor of the appellant." Lutz Tile, Inc. v. Krech, 136 Wn. App. 899, 906, 151 P.3d 219 (2007) (internal citations omitted). While we have rejected Xaykosy's arguments, we cannot conclude that the appeal was frivolous, and therefore decline Martin's request.

No. 69757-9-I/7

Affirm.

WE CONCUR:

_Spence_, A.C.J.

_Appelwick_, J

_Cox_, J.

7