# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of

IRLANDA RODRIGUEZ DIAZ,

Respondent,

and

JOSE MARCELO TENESACA ARPI,

Appellant.

No. 81784-1-I

DIVISION ONE

UNPUBLISHED OPINION

APPELWICK, J. — Tenesaca Arpi appeals from final orders entered in the dissolution of marriage after trial. He contends that to the extent the trial court's final orders were based on the mother's testimony and her allegations of domestic violence, they were not supported by substantial evidence. Tenesaca Arpi also contends that the residential schedule is not in the children's best interests and that the trial court erred in determining maintenance and child support. He contends that the parenting plan impermissibly allows the mother to obtain a modification without showing a substantial change in circumstances. Finally, he contends the trial court committed reversible evidentiary errors and was biased against him. We affirm.

FACTS

Jose Tenesaca Arpi (the father) and Irlanda Rodriguez Diaz (the mother) married in 2007 and separated in September 2018. They have two children together, D.T. and E.T.

In January 2019, the mother petitioned for dissolution. She requested limitations on the father's time with D.T. and E.T. and alleged that the father "has a history of domestic violence." She indicated there was a pending domestic violence protection order (DVPO) proceeding involving the children.

The mother also requested maintenance. According to her later testimony, she was unable to work due to a disability, her income was $1,120.00 per month consisting of disability benefits, and she had only a fifth-grade education. According to an administrative child support order entered in February 2019, the Social Security Administration had determined that the mother was completely disabled and unable to work.

A dissolution trial took place on March 11, 2020. The father was represented. The mother appeared pro se with the assistance of a translator. The father requested a 50-50 residential schedule. The father also asked the court to deny the mother's request for maintenance and to deviate downward on child support, indicating that he "now pays $400 per month for a child from outside of this marriage."

The mother requested that the father receive no residential time with D.T. and E.T. She testified that the father was "very violent and aggressive" and described an incident in March 2010 when the father sexually assaulted her. The

2

mother also testified that "when [the father] couldn't control his temper, he would take his belt off and hit [E.T.] all over his body." The mother recalled that in October 2018, after the parties separated, the father "threatened me that if I continued with the process of the divorce, he would kill me." She testified that she lived with her sister and her sister's husband, paid them $800.00 in rent, and helped to pay for garbage and water utilities. When asked if she knew how much her sister and brother-in-law made, the mother responded no.

One of the mother's adult children, who lived with the parties for approximately 12 years, described the father as "toxic to my entire family." He testified that the father "could be very rude to [the mother] at times" and would yell at her and call her names. He also testified that he once witnessed the father "shove[ the mother] into the bathroom thinking that no one would see" and recalled that "it was definitely intentional to push her against the bathroom door." He testified that although the father never hit him, he thought the father "disciplined the entire family by hitting [E.T. and that] by hitting [E.T.] he was punishing us and intimidating us."

After trial, the court entered a dissolution decree, final parenting plan, final child support order, and findings and conclusions. It found the mother credible, adopted the mother's version of the facts regarding the father's abusive behavior, and found that the father "has a history of domestic violence." The trial court determined the children would reside with the mother the majority of the time, except that the children would spend every other weekend with the father, plus one week of uninterrupted time in the summer. The court ordered the father to

complete a domestic violence evaluation and follow any recommendations it required. The court also ordered that the mother "may petition for modification of the parenting plan based upon the father's failure to comply" with the domestic violence evaluation and treatment requirements, and that "[i]f the mother shows that the father has failed to comply, the mother need not show a substantial change in circumstances."

The court ordered the father to pay maintenance of $1,500.00 per month through April 2022. It also ordered the father to make a monthly child support transfer payment to the mother of $858.34 through April 2022 and $1,282.90 thereafter, based on the standard calculation. The court denied the father's request for a deviation downward, finding that "[t]he child for whom the father is paying child support is about to turn 18" and a deviation would undermine the mother's financial ability to care for the children.

The father moved for reconsideration, which the trial court denied. The father appeals.

DISCUSSION

The father challenges the trial court's parenting plan, child support order, and maintenance award.[1] A trial court's rulings concerning these matters are

---

[1] Although the father was represented below, he maintains his appeal pro se. Pro se litigants are held to the same standards as attorneys and must comply with all procedural rules on appeal. See In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993). These rules require the appellant to provide "argument in support of the issues presented for review." RAP 10.3(a)(6). We address the father's assignments of error only to the extent they are supported by argument and not inadequately briefed to warrant consideration. See Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011) ("We will not consider an inadequately briefed argument.").

reviewed for abuse of discretion except to the extent they present issues of law, which we review de novo. In re Marriage of Buchanan, 150 Wn. App. 730, 735, 207 P.3d 478 (2009); In re Marriage of Lee, 176 Wn. App. 678, 684, 310 P.3d 845 (2013). A trial court abuses its discretion when its decision is manifestly unreasonable, or its discretion is exercised on untenable grounds or for untenable reasons. In re Parentage of T.W.J., 193 Wn. App. 1, 6, 367 P.3d 607 (2016).

A trial court's unchallenged findings are verities on appeal, and challenged findings are binding if supported by substantial evidence. In re Estate of Langeland, 177 Wn. App. 315, 320, 312 P.3d 657 (2013). "'Substantial evidence' is evidence sufficient to persuade a fair-minded, rational person that the finding is true." Id.

I. Substantial Evidence

The father first contends that the trial court's orders must be reversed because none are supported by substantial evidence. He asserts that the mother was barred from claiming domestic violence in the dissolution proceeding and that the mother was not credible. Accordingly, he contends, the trial court's orders must be reversed because they rely on the court's domestic violence findings and its belief in the mother's testimony.

A. Domestic Violence Claims

The father contends that "[w]hen the mother voluntarily dismissed her DVPO [petition] with prejudice, she waived any right to ever litigate claims of violence that pre-dated [May 9, ]2019," the date of the dismissal order. (Some capitalization omitted.) The father relies on the doctrines of claim preclusion, issue

5

preclusion, and judicial estoppel to support his contention.[2] He fails to establish that any of these doctrines apply.

Claim preclusion "prevent[s] a second assertion of the same claim or cause of action," and issue preclusion "bars relitigation of an issue in a subsequent proceeding involving the same parties." Ullery v. Fulleton, 162 Wn. App. 596, 602, 256 P.3d 406 (2011). A final judgment on the merits is a threshold requirement under both doctrines. Id. at 603, 610 n.4. But, here, it is undisputed that the dismissal of the mother's DVPO petition was based on the agreement of the parties. It was not a judgment on the merits. The father fails to establish that the threshold requirement of issue or claim preclusion is satisfied. And, he does not address the remaining elements of either doctrine.[3] His reliance on these doctrines is misplaced.

The father's reliance on judicial estoppel is equally misplaced. "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage

---

[2] The father raised these legal theories for the first time in his motion for reconsideration. The mother does not contend that we should decline to reach their merits for that reason.

[3] See Hassan v. GCA Prod. Servs., Inc., 17 Wn. App. 2d 625, 634, 487 P.3d 203 (2021) ("[T]he 'party seeking to apply [claim preclusion] must establish four elements as between a prior action and a subsequent challenged action: concurrence of identity . . . (1) of subject-matter; (2) of cause of action; (3) of persons and parties; and (4) in the quality of the persons for or against whom the claim is made.'" (first alteration added) (internal quotation marks omitted) (quoting Weaver v. City of Everett, 194 Wn.2d 464, 480, 450 P.3d 177 (2019))); Dotson v. Pierce County, 13 Wn. App. 2d 455, 466-67, 464 P.3d 563 ("Issue preclusion applies if (1) the issue decided in the earlier proceeding was identical to the issue in the later proceeding, (2) the earlier proceeding ended in a judgment on the merits, (3) the party against whom issue preclusion is asserted was a party to, or in privity with a party to, the earlier proceeding, and (4) the application of issue preclusion does not cause an injustice to the party against whom it is applied."), review denied, 196 Wn.2d 1018, 474 P.2d 1050 (2020).

by asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position." Cunningham v. Reliable Concrete Pumping, Inc., 126 Wn. App. 222, 224-25, 108 P.3d 147 (2005). Courts examine three factors to determine whether judicial estoppel applies: (1) whether a party asserts a position inconsistent with an earlier one, (2) whether acceptance of the position would create the perception that a party misled a court in either proceeding, and (3) whether the party asserting the inconsistent position would receive an unfair advantage or impose an unfair detriment. Arp v. Riley, 192 Wn. App. 85, 92, 366 P.3d 946 (2015).

The father contends the mother took inconsistent positions by voluntarily dismissing her DVPO petition but still asserting in the dissolution proceeding that the father committed domestic violence. But, we are not persuaded that voluntarily agreeing to dismiss a DVPO petition is, as the father suggests, equivalent to a representation that no domestic violence occurred. Consequently, we also are unpersuaded that the mother's dismissal of her DVPO petition was "clearly inconsistent" with her later assertions that domestic violence occurred. See Cunningham, 126 Wn. App. at 224-25. Additionally, the father fails to explain how the trial court was misled given that it was aware of, and specifically inquired about, the circumstances surrounding the DVPO petition dismissal. Cf. Arp, 192 Wn. App. at 91 (judicial estoppel "is intended to protect the integrity of the courts but is not designed to protect litigants"). The father does not establish the trial court erred in considering the mother's assertions that the father committed domestic violence.

B. The Mother's Credibility

The father next contends that the trial court erred in finding the mother credible. This contention fails for two reasons. First, it is well established that this court does not review credibility determinations. See In re Marriage of Burrill, 113 Wn. App. 863, 868, 56 P.3d 993 (2002) ("[C]redibility determinations are left to the trier of fact and are not subject to review."). Second, the father's contention relies on his assertion that we reject above, that the mother's dismissal of her DVPO petition is irreconcilable with her later claim that domestic violence occurred.

C. Conclusion

The father argues that substantial evidence does not support the trial court's dissolution orders. But, his argument relies on his assertions that the mother was barred from claiming domestic violence and the trial court erred by finding the mother credible. Because these assertions fail, so too does the father's substantial evidence challenge.

II. Financial Orders

The father contends that the child support and maintenance orders must be reversed because (1) the court erred in increasing child support beginning May 2022, (2) the mother did not disclose the income of the other adults in her household, and (3) the father's income has decreased.

A. Child Support Increase

The trial court found that the father earned a gross monthly wage of $6,025.00 and that the mother receives social security disability benefits in the gross monthly amount of $1,120.00. The trial court used these figures to calculate

child support based on the standard calculation, finding further that the mother was unable to work due to a disability, the father had a stable job, and there was no evidence the father's income would decrease in the foreseeable future.[4]

In applying the standard calculation, the trial court took into account that it had ordered the father to pay maintenance of $1,500.00 per month through April 2022. Specifically, the court included the $1,500.00 monthly maintenance as income to the mother, and a deduction from income for the father, through April 2022 but not thereafter. This resulted in a decrease in the mother's monthly net income and an increase to the father's beginning May 2022. Consequently, it also changed each party's proportional share of income beginning in May 2022, resulting in the father's child support transfer payment increasing from $858.34 per month to $1,282.90 as of May 2022. The father contends that "[n]othing in the law allows" such an increase.

The father is incorrect. "Contemporaneously ordered maintenance must be considered when determining income and net income for purposes of the child support schedule." In re Marriage of Condie, 15 Wn. App. 2d 449, 456, 475 P.3d 993 (2020); see also RCW 26.19.071(3)(q), 5(f) (providing that, in determining income, maintenance received shall be included and maintenance paid shall be deducted). Accordingly, we discern no abuse of discretion in the trial court's taking its maintenance order into account by ordering child support to increase as a consequence of the father's maintenance obligation ending. Cf. RCW

---

[4] To the extent the father asserts that substantial evidence does not support the findings described in this section, he is incorrect. Substantial evidence in the record supports these findings.

26.09.100(2) (authorizing trial court to require automatic modifications of child support based on the child support schedule).

    B.  <u>Household Income</u>

The father contends that because the mother did not disclose the income of the other adults with whom she lived, the trial court's maintenance and child support orders must be vacated.

As the mother points out with regard to child support, "[o]nly the income of the parents of the children whose support is at issue shall be calculated for purposes of calculating the basic support obligation." RCW 26.19.071(1). And, to the extent the father contends the trial court was required to deviate downward based on additional income in the mother's household, his contention is unpersuasive: RCW 26.19.075(1)(a)(ii) provides that "[i]ncome of . . . other adults in the household is not, by itself, a sufficient reason for deviation." The father does not meet his burden to show that the trial court abused its discretion in calculating child support without including any income of other adults in the mother's household. See <u>In re Marriage of Bowen</u>, 168 Wn. App. 581, 586, 279 P.3d 885 (2012) ("[T]he spouse who challenges [a trial court's decisions in a dissolution action] bears the heavy burden of showing a manifest abuse of discretion.").

The father also fails to satisfy his burden to establish an abuse of discretion with regard to the trial court's maintenance award. "An award of maintenance is 'a flexible tool by which the parties' standard of living may be equalized for an appropriate period of time.'" <u>In re Marriage of Anthony</u>, 9 Wn. App. 2d 555, 564, 446 P.3d 635 (2019) (quoting <u>In re Marriage of Washburn</u>, 101 Wn.2d 168, 179,

677 P.2d 152 (1984)). "'The only limitation on amount and duration of maintenance under RCW 26.09.090 is that, in light of the relevant factors, the award must be just.'" Id. (quoting In re Marriage of Bulicek, 59 Wn. App. 630, 633, 800 P.2d 394 (1990)). "While the trial court must consider the factors listed in RCW 26.09.090(1), it is not required to make specific factual findings on all of the factors." Id. "Ultimately, the court's main concern must be the parties' economic situations postdissolution." Id.

Here, the record reflects the trial court considered the relevant factors, including the relative financial resources of the parties, finding that the father earns significantly more than the mother. Furthermore, whatever the mother's sister and brother-in-law earn, the father points to no evidence that any such earnings are an available financial resource to the mother. Indeed, the mother testified to the contrary, stating, "I just live there with my children and pay rent." And, while the father claimed for the first time on reconsideration that the mother "lives with her own current boyfriend who I believe makes $100,000+ per year," he points to no evidence to support that belief. The father fails to establish an abuse of discretion.

C. Decrease in Father's Income

The father next contends that the trial court erred in declining to revisit its financial orders based on an asserted decrease in his income beginning in March 2020 due to the COVID-19 (coronavirus disease 2019) pandemic.

The father first claimed an income decrease in his motion for reconsideration. "Motions for reconsideration are addressed to the sound discretion of the trial court and a reviewing court will not reverse a trial court's ruling

absent a showing of manifest abuse of discretion." Wilcox v. Lexington Eye Inst., 130 Wn. App. 234, 241, 122 P.3d 729 (2005).

As the mother points out, although the father challenges the trial court's reconsideration decision, he does not address CR 59, governing motions for reconsideration. Consequently, he also does not explain why reconsideration was appropriate under that rule, much less why the trial court's denial of reconsideration constituted an abuse of discretion. The trial court did not abuse its discretion by denying the father's motion for reconsideration.

III. Children's Best Interests

The father contends that "[t]he parenting plan must be reversed with a new trial to revisit an inquiry into the children's best interests."

The father first asserts that "[s]ince the mother is not permitted to spend a great deal of her testimony on claims of [the] father['s domestic violence] and abuse, there was little to no evidence left before the court" to limit the father's residential time. This assertion fails because, as discussed, the trial court properly considered the mother's testimony regarding the father's abuse.

The father next asserts that the trial court should have imposed RCW 26.09.191 restrictions on the mother because of her "flip flopping change of mind" and abusive use of conflict. But, the father did not argue below that .191 restrictions were warranted. Furthermore, his contention that restrictions are warranted is based on challenges to the mother's credibility that we have already

rejected and on evidence that was not presented to the trial court.[5]  The trial court did not err by not imposing .191 restrictions on the mother.  See RAP 2.5(a) (appellate court may refuse to review issues raised for the first time on appeal); State v. McFarland, 127 Wn.2d 322, 337-38, 899 P.2d 1251 (1995) (appellate court will not consider matters outside the record).

Finally, the father asserts that in setting the residential schedule, the trial court improperly relied on a presumption in favor of the mother as the primary caregiver.  But, although the trial court found that the children resided a majority of the time with the mother under the temporary parenting plan, the record reflects no presumption on this basis by the trial court.  Rather, the record is clear that the limitations on the father's residential time were based on the father's history of domestic violence—not on the application of any presumption.  The father's assertion fails.

IV. Parenting Plan Modification Provision

The father challenges the parenting plan's provision that the mother "may petition for modification . . . based upon the father's failure to comply" with ordered domestic violence evaluation and treatment.  That provision also states, "If the mother shows that the father has failed to comply, the mother need not show a substantial change in circumstances."  The father contends that this language impermissibly allows the mother to obtain a full hearing on modification without

---

[5] The father claims that after trial, the mother falsely reported to police that the father had molested the children.

13

demonstrating adequate cause and to "have the P[arenting] P[lan] modified without the need to show a substantial change in circumstances."

"To satisfy the adequate cause burden for a major modification under RCW 26.09.260(1), the parent [seeking modification] must make a threshold showing that, since the entry of the original plan, 'a substantial change has occurred in the circumstances of the child or the nonmoving party and that the modification is in the best interest of the child and is necessary to serve the best interests of the child.'" In re Marriage of Snider, 6 Wn. App. 2d 310, 320, 430 P.3d 726 (2018) (emphasis added) (quoting RCW 26.09.260(1)). The trial court's order addresses only the first part of the adequate cause inquiry. It does not, as the father avers, allow the mother to bypass adequate cause and proceed to a full modification hearing based solely on the father's failure to comply with domestic violence evaluation and treatment requirements.

It is clear from the context that the father's compliance with domestic violence evaluation and treatment was a condition of the parenting plan. Specifically, the trial court found the mother credible and adopted her testimony as to the father's abuse. Yet, the trial court did not deny the father residential time as the mother requested. Instead, it granted the father time on alternating weekends based on his anticipated participation in domestic violence evaluation and treatment. The trial court's order does not allow the mother to proceed to a full hearing, or obtain a modification, without showing a substantial change in circumstances. Instead, it states the trial court's intention that the father's failure to comply with a condition of the parenting plan should be regarded by a later court

considering a modification petition as being a substantial change in circumstances. While the father is correct that modifications are governed by statute, the statute does not prohibit the trial court from expressing its intentions in this manner under facts such as these. The father does not establish that the trial court erred in this regard.

## V. Evidentiary Errors

The father contends the trial court erred by testifying in violation of ER 602,[6] ER 605,[7] and ER 702.[8] He contends further that the trial court erred by allowing the mother to testify as to hearsay and matters outside of her personal knowledge and qualifications in violation of ER 602, ER 702, and ER 802.[9]

But, although the father claims "[t]he judge testified that the mother could not work," he provides no citation to the record to support that claim, and our review of the record reveals no such testimony by the trial court. See RAP 10.3(a)(6) (requiring argument section of brief to include references to relevant parts of the record). And, the father did not object to any of the other evidentiary errors he now claims on appeal. See ER 103(a)(1) ("Error may not be predicated upon a ruling which admits . . . evidence unless a substantial right of the party is affected,

---

[6] ER 602 provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."

[7] ER 605 provides that "[t]he judge presiding at the trial may not testify in that trial as a witness."

[8] ER 702 provides, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

[9] ER 802 provides that hearsay is generally not admissible.

and . . . a timely objection or motion to strike is made.").[10]   For the foregoing reasons, we decline to review the father's claims of evidentiary error.

VI. Judicial Bias

The father contends that reversal is required because "[t]he judge's rulings and actions on their face, alone, show egregious bias."

The father is correct that the appearance of fairness doctrine and principles of due process require judicial officers to "be free of any taint of bias." City of Lake Forest Park v. Shoreline Hearings Bd., 76 Wn. App. 212, 217, 884 P.2d 614 (1994). But, as the father also acknowledges, "[e]vidence of a judge's actual or potential bias is required" to establish a violation. In re Marriage of Meredith, 148 Wn. App. 887, 903, 201 P.3d 1056 (2009).

Here, the father does not point to any evidence of the trial judge's actual or potential bias.  Instead, he contends the trial judge's rulings in favor of the mother demonstrate the judge's bias.  The judge's unfavorable rulings are insufficient, without more, to warrant reversal.  See In re Pers. Restraint of Davis, 152 Wn.2d 647, 692, 101 P.3d 1 (2004) ("Judicial rulings alone almost never constitute a valid showing of bias.").  Therefore, we reject the father's claim of judicial bias.

VII. Fees on Appeal

The mother requests fees on appeal under RCW 26.09.140, which authorizes an appellate court to award fees after "examin[ing] the arguable merit of the issues on appeal and the financial resources of the respective parties."  In

---

[10] A party need not object to preserve error predicated on a judge's improperly testifying.  ER 605.

16

re Marriage of Booth, 114 Wn.2d 772, 779-80, 791 P.2d 519 (1990).  Under RAP 18.1(c), "[i]n any action where applicable law mandates consideration of the financial resources of one or more parties regarding an award of attorney fees and expenses, each party must serve . . . and file a financial affidavit no later than 10 days prior to the date the case is set for . . . consideration on the merits."  Because the mother did not timely file a financial affidavit as required by this rule, we deny her request for fees on appeal.

We affirm.

_Appelwick, J._

WE CONCUR:

_Chun, J._        _Verellen, J._